**Louie F. BAY, Plaintiff-Appellant,**

v.

**WESTERN PACIFIC RAILROAD COMPANY, Defendant-Appellee.**

No. 77–2167.

United States Court of Appeals,
Ninth Circuit.

April 19, 1979.

Donald M. Sea, Oakland, Cal., for plaintiff-appellant.

S. Farber, San Francisco, Cal., for defendant-appellee.

Before CHOY and ANDERSON, Circuit Judges, and BARTELS,* District Judge.

---

* The Honorable John R. Bartels, Senior United States District Judge for the Eastern District of New York, sitting by designation.

PER CURIAM:

Bay appeals from the district court's dismissal of his complaint against Western Pacific Railroad Company (Western Pacific). We affirm.

### I. Statement of the Case

In January, 1971, Western Pacific allegedly learned that Bay may have made misrepresentations on the employment application that led to his being hired. This information was revealed during the pendency of a suit brought under the Federal Employer's Liability Act (FELA), 45 U.S.C. § 51, by Bay against Western Pacific for recovery of damages for injuries allegedly sustained by Bay in the course of his employment by Western Pacific. After investigating the apparent misrepresentations, Western Pacific discharged Bay. Bay claimed that the discharge was improper because Western Pacific knew of the misrepresentations prior to hiring him. He also contended that Western Pacific fired him because he refused to settle the FELA suit.

Bay's union processed his grievance for reinstatement, eventually submitting the claim to arbitration by Public Law Board No. 1048, which had been established by agreement between Western Pacific and the union pursuant to the Railway Labor Act. *See* 45 U.S.C. § 153 Second. The Board rejected Bay's claim for reinstatement.

Approximately two years later Bay instituted two actions. In one suit, not on appeal here, Bay sought review of the Board's decision according to the review provisions of § 153. *Bay v. Public Law Board No. 1048.* In the case now on appeal, Bay sued his former employer, Western Pacific, directly. He alleged that Western Pacific had "violated the intent and purpose of the Federal Employer's Liability Act and U.S. Code Title 41 [42], Sections 1981 and 1983." Upon Western Pacific's motion, the district court dismissed the complaint with leave to file an amended complaint.

Bay then filed an amended complaint, adding allegations of a violation of 45 U.S.C. § 55. The court dismissed this complaint with prejudice. Bay then filed this appeal.[1]

### II. Private Cause of Action Under § 55

Section 55 is part of FELA, 45 U.S.C. §§ 51–60, providing certain railroad employees with a federal right to sue for damages for certain types of job-related injuries, chiefly those caused by negligence of the employer or its agents. 45 U.S.C. § 51. Section 55 provides:

> Any contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this chapter, shall to that extent be void: *Provided,* That in any action brought against any such common carrier under and by virtue of any of the provisions of this chapter, such common carrier may set off therein any sum it has contributed or paid to any insurance, relief benefit, or indemnity that may have been paid to the injured employee or the person entitled thereto on account of the injury or death for which said action was brought.

Bay claims that his discharge by Western Pacific because of his failure to settle his FELA suit constituted a "device" by which Western Pacific sought to exempt itself from some FELA liability by encouraging Bay to settle.[2] He further claims that § 55 provides a private cause of action to an employee victimized by such a device.

We disagree. On its face § 55 does not create a private cause of action. Instead, the legislative history of the bill containing the nearly identical predecessor of § 55,

---

**1.** Although Bay's amended complaint contained allegations concerning 42 U.S.C. § 1983, he does not contest the court's dismissal of his complaint as it relates to § 1983.

**2.** Given our resolution *infra*, we do not decide if Western Pacific's alleged behavior would constitute a "device" within the meaning of § 55.

§ 5,[3] establishes that Congress' purpose in enacting § 5 was to create a "shield" against a railroad's defense that an employee had contracted away his right to sue the railroad for personal injuries and not to provide a "sword" for a separate suit against the railroad. Congress indicated that it wished to "void" contracts "discharging the company from liability for personal injuries"; such contracts had become almost a standard practice in the railroad industry. S.Rep.No.1386, 60th Cong., 1st Sess., 6 (1908). Congress also noted that although many states had held such contracts unenforceable as a defense to an employee's action, the United States Supreme Court had found such a contract a good defense because there was no federal statute invalidating the contract. *Id.* at 7. Finally, the congressional report suggested that the federal law under § 5 would correspond with the law in those states that made such contracts "invalid, and . . . no defense to an action against" a railroad for injuries to an employee. *Id.* The report makes no mention of § 5 authorizing a separate suit against a railroad because it undertook a device or entered into an unenforceable contract.

The Supreme Court has similarly read the purpose of § 5. For example, in *Philadelphia, Baltimore & Washington Railroad Co. v. Schubert*, 224 U.S. 603, 32 S.Ct. 589, 56 L.Ed. 911 (1912), plaintiff sued his employer under the precursor to FELA. The railroad defended by noting that the employee had joined a "Relief Fund" and as an incident thereto, signed a waiver of claims. The Supreme Court held that § 5 barred the defense. The Court noted that the practice of obtaining waivers prior to accidents and as an incident of employment was well-known to Congress and the object of § 5:

> The practice of maintaining relief departments, which had been extensively adopted, and of including in the contract of

membership provision for release from liability to employees who accepted benefits, was well known to Congress . . . .

*Id.* at 612–13, 32 S.Ct. at 592; *see Callen v. Pennsylvania Railroad Co.*, 332 U.S. 625, 630–31, 68 S.Ct. 296, 92 L.Ed. 242 (1948); *Second Employers' Liability Cases*, 223 U.S. 1, 52, 32 S.Ct. 169, 56 L.Ed. 327 (1912). Similarly, in *Duncan v. Thompson*, 315 U.S. 1, 7, 62 S.Ct. 422, 86 L.Ed. 575 (1942), the Supreme Court held that § 5 invalidated an agreement by which an employee had to return monies advanced to him by the employer after an accident if the parties did not settle and the employee resorted to litigation. And in *Boyd v. Grand Trunk Western Railroad Co.*, 338 U.S. 263, 70 S.Ct. 26, 94 L.Ed. 55 (1949), the Court held that § 5 invalidated an agreement between a railroad and an injured employee limiting the employee's choice of venue if he chose to sue the railroad.

We must conclude, then, that § 55 was intended to bar a defense, presented in a suit for damages for injuries under FELA, based upon an employee's relinquishment of rights under FELA. It was not intended to afford a cause of action, separate from that for recovery of damages for injury under FELA, against an employer that engages in a device to exempt itself from FELA liability.[4]

Accordingly, Bay cannot state a claim upon which relief can be granted. *See* Fed. R.Civ.P. 12(b)(6). The district court's dismissal is therefore

AFFIRMED.

---

**3.** Section 5 of the Employer's Liability Act of April 22, 1908, ch. 149, 35 Stat. 65. Section 5 was identical to the present § 55 except for a few minor stylistic changes.

**4.** In the only reported decision dealing specifically with this question, the court wrote:

"There is no basis for plaintiff's contention that this section [§ 55] creates a civil cause of action." *Fullerton v. Monongahela Connecting Railroad Co.*, 242 F.Supp. 622, 626 (W.D.Pa. 1965).