739 F.2d 929
 Paul F. FOX and Morris S. Exler on behalf of themselves and
all other similarly situated persons who within six years
before the filing of this action were employees of
Consolidated Rail Corp. and who while employees obtained
settlements with the Defendant in which supplemental sick
payments were setoff against the settlement, Appellants,
v.
CONSOLIDATED RAIL CORPORATION, themselves and on behalf of
all other railroads comprising the National Carriers'
Conference Committee and participating in the National
Supplemental Sickness Benefit Plan issued by Provident Life
and Accident Insurance Company, Appellee.
 No. 83-5666.
 United States Court of Appeals,
Third Circuit.
 Submitted Under Third Circuit Rule 12(6)
April 27, 1984.
Decided July 20, 1984.
 
 Barry M. Simpson, Brennan, Robins & Daley, Pittsburgh, Pa., for appellants.
 Benjamin W. Boley, William F. Sheehan, David M. Brenner, Shea & Gardner, Washington, D.C., Michael W. Burns, Joseph S.D. Christof, Dickie, McCamey & Chilcote, Pittsburgh, Pa., for appellee.
 Before ALDISERT, Chief Judge, and WEIS and ROSENN, Circuit Judges.
 OPINION OF THE COURT
 ALDISERT, Chief Judge.
 
 
 1
 In this case of first impression, we must decide whether plaintiffs have presented a claim for which relief could be granted in seeking to have a federal district court reopen Federal Employers' Liability Act cases originally brought, and thereafter settled, in the Pennsylvania state courts. Prior to payment of the agreed upon settlement amount, the defendant railroad deducted from that amount premium payments it had made on behalf of each plaintiff under supplemental insurance programs. Plaintiffs, believing such deductions improper, instituted the present action to recover same. The district court denied relief and plaintiffs appealed. We affirm.
 
 I.
 
 2
 The named plaintiffs allegedly suffered personal injuries in the course of their employment with defendant, Consolidated Rail Corporation, and brought damage suits in state court under the provisions of the Federal Employers' Liability Act (FELA), 45 U.S.C. Secs. 51-60. Section 51 of FELA provides, in relevant part, that "[e]very common carrier by railroad while engaged in commerce ... shall be liable in damages to any person suffering injury ... resulting in whole or in part from the negligence of ... such carrier ...." In order to limit the defenses available to defendant railroads, Sec. 55 states that
 
 
 3
 [a]ny contract, rule, regulation, or device ..., the purpose or intent of which shall be to ... exempt [the railroad] from any liability created by this chapter, shall ... be void: Provided, That ... such common carrier may set off therein any sum it has contributed or paid to any insurance ... that may have been paid to the injured employee....
 
 
 4
 Thus, by their express terms, Sec. 51 allows suit and Sec. 55 prevents the raising of potential defenses.
 
 
 5
 Each of the state court cases initiated by plaintiffs was ultimately discontinued upon proof that a settlement agreement had been reached. The railroad then deducted from the settlement amounts the disability payments paid to plaintiffs under the supplemental insurance benefit program. Plaintiffs, alleging that these deductions violated Sec. 55 of FELA, filed the present class action in the district court below. The complaint asked for a judgment in the amount of the deductions and an order enjoining the railroad from continuing this practice in future settlements. Defendant, arguing that the action was brought under Sec. 55, moved under Rule 12(b)(6), F.R.Civ.P., to dismiss the complaint on the grounds that the section "neither establishes nor implies a private cause of action [and] in any event the settlements ... were not unlawful." Because a favorable decision on defendant's motion would eliminate the need for the substantial expenditures associated with class certification, the parties agreed that the court should decide the dismissal motion first.
 
 
 6
 The district court agreed with the railroad and concluded that Sec. 55 does not create a private cause of action, citing Bay v. Western Pacific R.R., 595 F.2d 514 (9th Cir.1979), and Fullerton v. Monongahela Connecting R.R., 242 F.Supp. 622 (W.D.Pa.1965). The court was persuaded by the Bay rationale that Sec. 55 was intended only to allow a FELA plaintiff to avoid a railroad defense based on a contract discharging the carrier from liability. In the words of the Bay court, the statute provided a "shield" for the employee but not a "sword" that could be used to bring a separate suit against the railroad. Accordingly, the complaint was dismissed.
 
 
 7
 On appeal, plaintiffs contend that their case is based on Sec. 51, not Sec. 55. Appellee responds that the personal injury claims actionable under Sec. 51 were extinguished by the settlements. Appellants' present contentions, appellee argues, are based on intentional acts of the railroad in connection with the settlements, not negligent conduct causing bodily injury that is the sole basis of liability under Sec. 51. We must inquire, therefore, whether any relief is now available to appellants under Sec. 51.
 
 II.
 
 8
 Preliminarily, we note that even though FELA provides for concurrent state and federal court jurisdiction, 45 U.S.C. Sec. 56, it is firmly established that the substantive aspects of such litigation are governed by federal law. See, e.g., Lukon v. Pennsylvania R.R., 131 F.2d 327, 329 (3d Cir.1942); see also Dice v. Akron, Canton & Youngstown R.R., 342 U.S. 359, 72 S.Ct. 312, 96 L.Ed. 398 (1952). Also, in interpreting the Act, it is important to bear in mind that it was enacted in "response to the special needs of railroad workers," Sinkler v. Missouri Pacific R.R., 356 U.S. 326, 329, 78 S.Ct. 758, 761, 2 L.Ed.2d 799 (1958), and should be construed liberally for the protection of railroad employees, Sowards v. Chesapeake and Ohio Ry., 580 F.2d 713, 714 (4th Cir.1978); Lukon, 131 F.2d at 329. Further, we note that the Act is a statutory mechanism designed to give injured railroad employees a federal right to sue "in commerce" railroad employers for what would otherwise be a common law action for negligently inflicted tortious damages. Finally, although the Act is a federal counterpart to state worker's compensation laws, it allows for more generous remedies to injured workers.
 
 
 9
 One element of a prima facie case brought under Sec. 51, therefore, is the averment of negligence, and, to reverse the grant of a 12(b)(6) motion, appellants must show that there is some set of facts that they could prove at trial to support such an averment. If we were to view the present suit as representing a new claim based on appellee's unilateral reduction of the agreed upon settlement figure, we would have serious doubts whether appellants would be able to make out the requisite levels of proof. First, the injury complained of is economic, not tortious; second, the behavior of the railroad in effecting the deduction of insurance benefits was deliberate, not negligent; and third, the basis for claiming that the railroad's actions were illegal is the violation of a federal statutory provision and is not grounded in the common law. Characterized as such, we would have difficulty asserting that, regardless of the additional facts appellants might be able to prove at trial, the injury for which they seek to recover is tortious, arising from Conrail's negligence.
 
 
 10
 But appellants, perhaps anticipating these difficulties, try to characterize their action as one arising from the alleged tort that formed the basis of their original state court suits. They assert that the "claims [presented herein] are not new claims arising under a new cause of action ...," but rather relate back to the original injuries. Brief for Appellant at 10. Further, they contend that they are not seeking some new or additional recovery, but only the "restoration of damages that they were lawfully entitled to under [their original] Sec. 51" FELA claims. Id. at 13.
 
 
 11
 Viewed as such, what appellants are seeking is federal review of a settlement agreement that terminated previously instituted FELA suits. Because the interpretation of such an agreement, even if performed in state court, would be a question of federal law, federal question jurisdiction is available to allow them entry into our courts. Imm v. Union R.R., 289 F.2d 858 (3d Cir.1961). But that does not end our inquiry. As noted above, the settlement that appellants challenge was the direct result of, and formed the basis for discontinuing, several state court FELA suits, and the claims presented in the appeal before us are not new claims but stem from the injuries that formed the basis of those same state court actions. Thus, to be able to review the legality of the settlement and to afford appellants, and the class they represent, the relief demanded, we are essentially being asked to take over where the discontinued state actions left off.
 
 
 12
 It is well settled that a federal court has the inherent power to enforce and to consider challenges to settlements entered into in cases originally filed therein. Pearson v. Ecological Science Corp., 522 F.2d 171 (5th Cir.1975), cert. denied, 425 U.S. 912, 96 S.Ct. 1508, 47 L.Ed.2d 762 (1976). Typically, the court does this without inquiring into, or requiring, an independent basis of subject matter jurisdiction for the enforcement/challenge suit. See Aro Corp. v. Allied Witan Co., 531 F.2d 1368 (6th Cir.), cert. denied, 429 U.S. 862, 97 S.Ct. 165, 50 L.Ed.2d 140 (1976). But see Fairfax Countywide Citizens Ass'n v. County of Fairfax, 571 F.2d 1299 (4th Cir.1978) (when settlement is not contained in district court's order dismissing original action subsequent enforcement suit filed in same court requires an independent jurisdictional basis).
 
 
 13
 But, that is not the question presented to us today. The issue before us is whether the federal courts have, or should exercise, authority to reopen, by collateral means, private law suits brought and settled in the state court system, where the grounds asserted for relief are not a denial of constitutional rights, but rather an assertion that in completing the agreement that terminated the state court actions brought under federal law, a certain federal statute was not respected. To state the issue is to answer it. Having elected to proceed in the first instance in a state court, it is to that court that these appellants must return for any relief to which they may be entitled. As stated in Lee v. Hunt, 483 F.Supp. 826, 832 (W.D.La.1979), aff'd, 631 F.2d 1171 (5th Cir.1980), where venue was challenged by a party contesting the validity of a court approved settlement, "judicial economy and the policy favoring settlement as an end to litigation require that settlement agreements be enforced in the same court in which the [original] litigation was pending."[1]
 
 III.
 
 14
 Accordingly, the judgment of the district court will be affirmed.
 
 
 15
 WEIS, Circuit Judge, dissenting.
 
 
 16
 I agree with the majority that the interpretation of a settlement agreement in a FELA suit is a matter of federal law, Dice v. Akron, Canton, & Youngstown Railroad, 342 U.S. 359, 361-62, 72 S.Ct. 312, 314-15, 96 L.Ed. 398 (1952), and that federal courts have jurisdiction over cases such as the one at hand, Imm v. Union Railroad, 289 F.2d 858 (3d Cir.1961). I dissent because I cannot agree with the majority's determination that plaintiffs must bring their action in the state court. Moreover, although the point is not squarely addressed by the majority, I would conclude that the district court erred in dismissing the complaint for failure to state a cause of action.
 
 
 17
 The district court did not view the case as a dispute over the settlement of a personal injury claim, but rather as one based solely on section 55 of the FELA, 45 U.S.C. Sec. 55. In finding no cause of action under that provision, the court relied on two cases, Bay v. Western Pacific Railroad, 595 F.2d 514 (9th Cir.1979), and Fullerton v. Monongahela Connecting Railroad, 242 F.Supp. 622 (W.D.Pa.1965).
 
 
 18
 Those cases are distinguishable from the case at hand. Unlike the situation presented here, the plaintiffs in Bay and Fullerton sought relief beyond that available under section 51. Their claims were not for damages attributable to physical injuries caused by railroad negligence.
 
 
 19
 In Fullerton, the plaintiff alleged a conspiracy to prevent him from recovering in another FELA suit. Damages were sought for, inter alia, defamation of character, emotional distress, and invasion of privacy. These claims were triggered by the conduct of a railroad agent investigating the plaintiff. The Fullerton court correctly concluded that because the claims were not based on negligence, they did not come within the scope of section 51. In addition, the court stated, without discussion, that section 55 did not create a "civil cause of action." 242 F.Supp. at 626.
 
 
 20
 Similarly, the plaintiff in Bay did not seek recovery for a work-related injury. He asserted that his discharge from employment, allegedly for refusing to settle a FELA suit, violated section 55. The court cited Fullerton, noting that it was the "only reported decision dealing specifically with the question." 595 F.2d at 516 n. 4. Finding no evidence of congressional intent to allow a separate recovery under section 55, the Bay court concluded that the section's legislative purpose was to protect against a railroad defense that the employee had contracted away the right to sue. Section 55, the court stated, "was not intended to afford a cause of action, separate from that for recovery of damages for injury under FELA." 595 F.2d at 516. See also Landfried v. Terminal Railroad Assoc. of St. Louis, 721 F.2d 254, 256 (8th Cir.1983) (no cause of action under section 55 for retaliatory discharge), cert. denied, --- U.S. ----, 104 S.Ct. 1712, 80 L.Ed.2d 185 (1984).
 
 
 21
 In contrast to Bay and Fullerton, plaintiffs in this case do not seek damages separate and apart from, or in addition to, those available for the personal injuries covered by section 51. The plaintiffs' position is that they did not receive the full amount of damages set by the section 51 settlement because of the railroad's violation of section 55. The parties' position would be the same if plaintiffs had obtained a verdict in a section 51 action against the railroad which then applied the same setoff it invokes here. Cf. Clark v. Burlington Northern, Inc., 726 F.2d 448 (8th Cir.1984); Russo v. Matson Navigation Co., 486 F.2d 1018 (9th Cir.1973); Thomas v. Penn Central Co., 379 F.Supp. 24 (W.D.Pa.1974).
 
 
 22
 That the claims at bar are within the scope of the Act is further evinced by the repeated instances in which similar challenges to settlements have been brought in section 51 actions. Instead of directly challenging the settlement, plaintiffs could have brought a personal injury action under section 51. The railroad's defense of settlement could then be countered, as in Duncan v. Thompson, 315 U.S. 1, 62 S.Ct. 422, 86 L.Ed. 575 (1942), with the allegation that the settlement violated section 55. See also Hogue v. Southern Railway Co., 390 U.S. 516, 88 S.Ct. 1150, 20 L.Ed.2d 73 (1968). In a similar vein, the posture of the litigation here is akin to those cases where enforcement of a FELA settlement is sought. Good v. Pennsylvania Railroad, 384 F.2d 989 (3d Cir.1967). See also Napier v. Chesapeake & Ohio Railway Co., 582 F.2d 1344 (4th Cir.1978).
 
 
 23
 In Bay, the court relied on a congressional report to the "nearly identical predecessor of Sec. 55, Sec. 5 [of the Employer's Liability Act of 1908]." 595 F.2d at 515-16. That legislative history does not suggest that plaintiffs here fail to state a cause of action. The purpose of section 5 was to "make effective" the liability provision now represented by section 51. H.R.Rep. No. 1386, 60th Cong., 1st Sess. 6 (1908), quoted in Cavanaugh v. Western Maryland Railway Co., 729 F.2d 289, 292 (4th Cir.1984). Section 5 was viewed as "render[ing] void any contract or rule whereby a common carrier seeks to exempt itself from liability created by this act." H.R.Rep. at 6.
 
 
 24
 Here, plaintiffs want to complete their recovery under section 51 by challenging a setoff to the settlement of that claim as contravening section 55. Plaintiffs, in effect, seek to void the railroad's alleged improper attempt to partially exempt itself from its agreed to liability under section 51. A suit on that basis is within the expectations of the legislation.
 
 
 25
 I therefore differ with the district court's reasoning, and conclude that plaintiffs have properly stated a cause of action.
 
 
 26
 I come then to the majority's thesis that having elected to proceed in the first instance in the state court, plaintiffs must return there to obtain relief. Although somewhat appealing on first reading, further reflection reveals serious flaws with this rationale.
 
 
 27
 I assume that if plaintiffs had settled their claims without ever filing suit, the majority would concede that the district court should adjudicate the dispute at hand. Nothing in the majority opinion gives any indication to the contrary, and it does admit that federal question jurisdiction may be invoked. That being so, the filing of the state court suit is the critical factor leading the majority to opt for what may be considered a policy akin to abstention.
 
 
 28
 Because the validity of the settlement is a matter of federal statutory law and restraint of state proceedings is not sought, the three traditional bases for abstention set forth in Colorado River Water Conservation District v. United States, 424 U.S. 800, 814-16, 96 S.Ct. 1236, 1244-45, 47 L.Ed.2d 483 (1976), are not applicable here.[1] The Court has also articulated a narrow fourth category based on "considerations of 'wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.' " Id. at 817, 96 S.Ct. at 1246, (quoting Kerotest Manufacturing Co. v. C-O-Two Fire Equipment Co., 342 U.S. 180, 183, 72 S.Ct. 219, 221, 96 L.Ed. 200 (1952)). In explaining this standard, the Court observed that the pendency of a state proceeding is generally " 'no bar to proceedings concerning the same matter in the Federal Court' " and emphasized the "unflagging obligation" of a federal court to exercise its jurisdiction. Id. 424 U.S. at 817, 96 S.Ct. at 1246 (quoting McClellan v. Carland, 217 U.S. 268, 282, 30 S.Ct. 501, 505, 54 L.Ed. 762 (1910)). Nevertheless, "exceptional" circumstances permit the "dismissal of a federal suit due to the presence of a concurrent state proceeding." Id. 424 U.S. at 818.
 
 
 29
 The Colorado River principles were reaffirmed in Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), where the Court stated that "the task is to ascertain whether there exist 'exceptional' circumstances, [and] the 'clearest of justifications' ... to justify the surrender of [federal] jurisdiction." Id. at ----, 103 S.Ct. at 942. See also Arizona v. San Carlos Apache Tribe, --- U.S. ----, 103 S.Ct. 3201, 77 L.Ed.2d 837 (1983). A number of factors are to be considered in this analysis, including convenience of the forum, avoidance of piecemeal litigation, and sequence in which jurisdiction was obtained. 460 U.S. at ---- - ----, 103 S.Ct. at 937-943. "[T]he presence of federal-law issues must always be a major consideration weighing against surrender." Id. at ----, 103 S.Ct. at 942.
 
 
 30
 In the case at hand, no parallel action is presently pending in the state court. The personal injury suit brought there was dismissed, presumably on agreement of the parties. Thus, the relief plaintiffs request from the federal court will in no way affect the state court's disposition of its case which has long been closed. In short, the risks associated with piecemeal or duplicative litigation are nonexistent in this case. Moreover, deference to a state proceeding is not favored here because federal law provides the rule of decision on the merits. See id. at ---- & n. 32, 103 S.Ct. at 942 & n. 32.
 
 
 31
 Considerations of comity were not implicated in Colorado River, 424 U.S. at 817, 96 S.Ct. at 1246 and are not usually applicable when the state proceedings are completed, see Garden State Bar Association v. Middlesex County Ethics Committee, 687 F.2d 801, 803 (3d Cir.1982). A different situation might be presented where there is judicial participation, whether formal or informal, in the settlement of a state court suit. See Fleeger v. Clarkson Co., 86 F.R.D. 388, 393 (N.D.Tex.1980) (comity counsels dismissal of suit challenging court-approved settlement in course of Canadian receivership process); cf. In re Grand Jury Proceedings (Wright II), 654 F.2d 268, 277-79 (3d Cir.), cert. denied, 454 U.S. 1098, 102 S.Ct. 671, 70 L.Ed.2d 639 (1981); Ungar v. Mandell, 471 F.2d 1163 (2d Cir.1972). The record in this case, however, does not demonstrate any judicial intervention in the state court settlements. By contrast, in the case cited by the majority, Lee v. Hunt, 483 F.Supp. 826 (W.D.La.1979), aff'd, 631 F.2d 1171 (5th Cir.1980), claims were settled after several days of trial, with the active participation and supervision of the trial judge. No such circumstances are alleged here. For all the record reveals, the claims were settled without judicial intervention.
 
 
 32
 In sum, the mere fact that plaintiffs filed and settled a suit in the state court is not such an "exceptional" circumstance that a federal court should decline to hear this dispute. On the record before us, the state court had little more involvement than if the parties had settled the claim before filing suit.
 
 
 33
 I am not persuaded that a federal court can decline to adjudicate in this case, and therefore I dissent from the affirmance of the district court's dismissal.
 
 
 
 [1]
 Appellants can find no assistance in Duncan v. Thompson, 315 U.S. 1, 62 S.Ct. 422, 86 L.Ed. 575 (1942), or Hogue v. Southern R.R., 390 U.S. 516, 88 S.Ct. 1150, 20 L.Ed.2d 73 (1968). These cases stand for the proposition that if the plaintiff enters into a release prior to filing the FELA suit he need not tender back to the defendant the consideration received in order to sue. Neither case deals with a release or settlement arrived at under a state court FELA proceeding followed by a subsequent suit filed in federal court
 
 
 [1]
 The Court summarized the three traditional categories of abstention as (a) " 'cases presenting a federal constitutional issue which might be mooted ... by a state court determination of pertinent state law;' " (b) cases presenting "difficult questions of state law" that bear on "state efforts to establish a coherent policy with respect to a matter of substantial public concern;" and (c) cases where "federal jurisdiction has been invoked for the purpose of restraining state criminal" and other types of state proceedings. 424 U.S. at 814-16, 96 S.Ct. at 1244-45 (citations omitted); see also Kruse v. Snowshoe Co., 715 F.2d 120, 122 (4th Cir.1983), cert. denied, --- U.S. ----, 104 S.Ct. 1413, 79 L.Ed.2d 739 (1984)