OPINION OF THE COURT
Marcy S. Friedman, J.
This is an action based on an insurance policy issued by plaintiff insurer to defendants insureds, in which plaintiff seeks to recover amounts within or up to defendants’ deductible which plaintiff paid out on defendants’ behalf in settlement of three separate claims. Plaintiff moves for summary judgment on the complaint.
Plaintiff makes a simple showing in support of its motion, relying on a provision in the insurance policy that the insurer "may investigate and settle any claim or 'suit’ at our discretion.” In addition, plaintiff submits undisputed evidence that the claims were covered by the insurance policy; that the policy provided for a deductible of $5,000 per claim per occurrence; and that plaintiff paid out the amounts at issue and demanded repayment of the deductibles from defendants.
In opposition to the summary judgment motion, defendants point out that all of the claims were paid after the insurance policy expired and was not renewed. They argue that plaintiff, having lost their business, failed to exercise good faith in settling the claims. Alternatively, defendants contend that facts may exist showing plaintiff’s lack of good faith and that the motion should be denied pending disclosure.
Defendants’ answer consists merely of denials of the allegations of the complaint. A motion for summary judgment may, however, be defeated by an unpleaded defense. "When a plaintiff moves for summary judgment, it is proper for the court to look beyond the defendant’s answer and deny summary judgment if facts are alleged in opposition to the motion which, if true, constitute a meritorious defense.” (Nassau Trust Co. v Montrose Concrete Prods. Co., 56 NY2d 175, 182 [1982]; Rera v Rera, 100 Misc 2d 670 [Sup Ct, Suffolk County 1979]; 4 Weinstein-Korn-Miller, NY Civ Prac ¶ 3212.10.) The defense of insurer’s bad faith has seldom been considered by the appellate courts in the context of a settlement within a deductible. Thus, in order to evaluate whether defendants’ submissions are sufficient to create a triable issue of fact, the court must first consider the standards applicable to maintenance and proof of the defense.
*780 It is conceded in this case that the insurance policy provision which permits the insurer to settle claims in its discretion gives the insurer the right to settle claims without defendants’ consent. A similar provision, specifying that the insurer " 'may make such investigation and such settlement of any claim or suit as it deems expedient,’ ” has been held to give the insurer "the unconditioned right to settle any claim or suit without [the insured’s] consent.” (Feliberty v Damon, 72 NY2d 112, 116 [1988].) The insurer’s unconditioned right to settle is, however, subject to a duty to settle in good faith. As recently reiterated by the Court of Appeals, "[t]he notion that an insurer may be held liable for the breach of its duty of 'good faith’ in defending and settling claims over which it exercises exclusive control on behalf of its insured is an enduring principle, well settled in this State’s jurisprudence.” (Pavia v State Farm Mut. Auto. Ins. Co., 82 NY2d 445, 452 [1993].)
The cases recognizing a cause of action for bad-faith settlement have generally involved an insurer’s failure or refusal to settle claims within policy limits, thereby exposing the insured to liability for amounts in excess of the coverage. (See, e.g., Pavia v State Farm Mut. Auto. Ins. Co., supra; Gordon v Nationwide Mut. Ins. Co., 30 NY2d 427 [1972], cert denied 410 US 931 [1973].) In these cases, the conflict between the insurer and the insured which underlines the need for the good-faith inquiry is, on the one hand, the insurer’s interest in minimizing its payments under the policy and, on the other, the insured’s interest in obtaining a settlement which is fully covered. (Pavia v State Farm Mut. Auto. Ins. Co., supra, at 452.)
The duty of good-faith settlement is "an implied obligation” derived from any insurance contract. (Pavia v State Farm Mut. Auto. Ins. Co., supra, at 452.) Cases involving settlements within a deductible also present a potential conflict between the insured’s interest in paying as small a part of the deductible as possible, and the insurer’s interest in limiting its own exposure to liability by ensuring a settlement within the deductible, or in avoiding litigation expenses to seek dismissal of a claim which may readily be settled within the deductible. Thus, although the issue has apparently not been considered in this department, there is also compelling authority that a bad-faith claim may be raised as to an insurer’s settlement within policy limits which causes the insured to become liable for a deductible. (Orion Ins. Co. v General Elec. Co., 129 Misc *781 2d 466 [Sup Ct, Queens County 1985], affd for reasons stated below sub nom. United States Aviation Underwriters v General Elec. Co., 125 AD2d 567 [1986], lv denied 70 NY2d 612; Guarantee Ins. Co. v City of Long Beach, 106 AD2d 428 [2d Dept 1984].)[1]
In order to prevail on a bad-faith claim, the insured must meet a demanding standard on which it has the burden of proof. (See, Vermont Commr. of Banking & Ins. v Welbilt Corp., 133 AD2d 396 [2d Dept 1987].) It has long been held that a bad-faith claim may not be sustained on a showing of ordinary negligence on the part of the insurer. (Brennan v Mead, 81 AD2d 821 [1981], affd 54 NY2d 811.) Resolving a conflict of authority, the Court of Appeals has recently further clarified that although a bad-faith finding does not require a "heightened” showing of the insurer’s " 'sinister motive’ ” or intent to cause harm to the insured, a showing must be made that the "insurer’s conduct constituted a 'gross disregard’ of the insured’s interests — that is, a deliberate or reckless failure to place on equal footing the interests of its insured with its own interests when considering a settlement offer.” (Pavia v State Farm Mut. Auto. Ins. Co., supra, 82 NY2d, at 453.)
The facts necessary to satisfy this standard are less well defined. It has been held that even where an insurer is not required to consult its insured in regard to settlement, "the carrier is obliged in most circumstances to respond accurately to requests from its insured with reference to the progress of *782 any settlement negotiations.” (Knobloch v Royal Globe Ins. Co., 38 NY2d 471, 479 [1976].) This obligation was articulated in a case involving an insurer’s refusal to settle within policy limits, and it has been explained that its rationale is to give the insured an opportunity (for example, by adding its own funds to an insurer’s settlement offer) to avoid liability after trial that exceeds its coverage. (Feliberty v Damon, supra, 72 NY2d, at 116-117.) The significance of an insurer’s violation of the obligation to provide information is therefore less clear in a case involving a settlement within policy limits.
A recent discussion of the relevant inquiry, also articulated in the context of a refusal to settle within policy limits, offers the following guidance: "The bad-faith equation must include consideration of all of the facts and circumstances relating to whether the insurer’s investigatory efforts prevented it from making an informed evaluation of the risks of refusing settlement. In making this determination, courts must assess the plaintiff’s likelihood of success on the liability issue in the underlying action, the potential magnitude of damages and the financial burden each party may be exposed to as a result of a refusal to settle. Additional considerations include the insurer’s failure to properly investigate the claim and any potential defenses thereto, the information available to the insurer at the time the demand for settlement is made, and any other evidence which tends to establish or negate the insurer’s bad faith in refusing to settle.” (Pavia v State Farm Mut. Auto. Ins. Co., supra, 82 NY2d, at 454-455.)
The adequacy of the insurer’s investigation of the claim and the potential liability of the insured to the claimant would appear to be equally relevant to the bad-faith inquiry whether the case involves a settlement within a deductible or a refusal to settle within policy limits. Yet, in evaluating these aspects of the "bad faith equation” in either case, the court cannot be called upon in effect to try the underlying claim. "A determination of [bad] faith cannot be made to turn on an unavoidably speculative prognostication of the outcome of an unfinished [or never commenced] trial.” (Orion Ins. Co. v General Elec. Co., supra, 129 Misc 2d, at 475.) Rather, the inquiry must be limited to whether the insurer had an "arguably prudent” basis for its assessment of the insured’s liability and for its position on settlement. (See, Orion Ins. Co. v General Elec. Co., *783 supra; Dawn Frosted Meats v Insurance Co., 99 AD2d 448 [1st Dept 1984], affd for reasons stated below 62 NY2d 895.)[2]
In light of these standards, the court turns to the sufficiency of defendants’ submissions in opposition to plaintiffs summary judgment motion.
First, defendants claim that an issue as to plaintiffs bad faith is raised by the mere fact that all of the claims were settled after the policy was not renewed, a time when plaintiff allegedly therefore lacked the incentive to act with good faith in order to retain defendants’ business. This contention is wholly unpersuasive, particularly on this record in which there is no appearance that the insurer engaged in a pattern of settling the claims for the amount of the deductible. On the contrary, although one of the claims was settled for the full deductible amount ($5,000), one was settled for a little more than half ($2,706.51), and the third for substantially more than the deductible ($17,500), exposing the insurer to liability.
Next, although recognizing that the insurance policy contains a provision giving plaintiff the discretion to settle claims without their consent, defendants emphasize a different provision of the policy which states that the insurer "will pay those sums that the insured becomes legally obligated to pay.”[3] Defendants do not advance the voguish argument that this *784 provision restricts the insurer’s discretion so as to permit settlement without the insured’s consent only of those claims as to which there has been a judicial determination of the insured’s liability. (See, Annotation, 18 ALR5th 474, 508-516.)[4] Rather, their argument, although not clearly articulated, appears to be that the provision mandates an inquiry into whether the insured was liable for the claims paid in settlement, and that the insurer’s good faith cannot be found unless some showing is made of such liability. As to the nature of the showing, defendants do not take the position that liability must be conclusively demonstrated. Rather, they recognize that it may make "economic sense” to settle claims even though "there may not be a legal obligation to do so”, as where liability is arguable, and they take the measured position that all that is required is that the insurer have made a "reasoned determination based upon all the facts at hand.” In arguing that there are triable issues of fact which preclude summary judgment, however, defendants’ silent premise appears to be that the insurer has not yet demonstrated that it undertook this reasoned determination.
To the extent that defendants’ argument is that the insurer must make a reasonable investigation as to the insured’s potential liability and must have a prudent basis for settlement, the good-faith inquiry they advocate does not differ materially from the standard set forth in the appellate cases discussed above. However, to the extent that defendants’ argument is that it is the insurer’s burden to demonstrate the *785 insured’s liability for the settled claims or at least to demonstrate that a reasonable investigation was made of potential liability, defendants seek impermissibly to shift the burden of proof on the bad-faith defense from the insured to the insurer.
Lastly, defendants premise their claim of plaintiffs bad faith on the assertions that plaintiff did not properly investigate the claims prior to entering into the settlements, and that plaintiff did not respond to requests for information about the progress of the settlement negotiations. In this regard, defendants do assume their burden of proof on the bad-faith defense. However, their assertions are supported only by letters of their broker, written after the settlements were concluded, questioning plaintiff’s practices in settling the claims, and requesting more information on the settlements. While these letters raise some specific factual questions as to the adequacy of plaintiff’s investigation of the claims and as to defendants’ liability to the claimants, they are without probative value because unsworn. (Rue v Stokes, 191 AD2d 245 [1st Dept 1993].)
Although an insurer’s failure to conduct a proper investigation of a claim and potential defenses thereto bears on the issue of the insurer’s good faith (Pavia v State Farm Mut. Auto. Ins. Co., supra, 82 NY2d, at 455; Knobloch v Royal Globe Ins. Co., supra, 38 NY2d, at 480), defendants have not submitted an affidavit on personal knowledge setting forth any investigations defendants made on their own of the claims at issue, and defendants’ reasons, based on those investigations, for disputing their liability or the amount of damages paid to the claimants. Nor have defendants shown that they made any requests to plaintiff, prior to settlement of the claims, for information about plaintiff’s investigation of the claims or the progress of settlement negotiations, or that plaintiff failed to respond to such requests. (See, Knobloch v Royal Globe Ins. Co., supra, at 479.) Finally, defendants have not offered any other factual support for their contention that plaintiff failed to give due consideration to defendants’ interests in settling the claims. Rather, in view of their failure to submit an affidavit on personal knowledge raising any of the above issues, defendants’ opposition to the summary judgment motion reduces to mere speculation that because defendants did not renew their policy with plaintiff, plaintiff had no incentive to settle the claims fairly and simply disposed of them (as defendants put it) in a "half hearted” manner.
It is settled that where, as here, a movant for summary *786 judgment comes forward with proof to establish its cause of action sufficiently to warrant the court in directing judgment as a matter of law, the burden shifts to the opponent of summary judgment to "show facts sufficient to require a trial of any issue of fact.” (CPLR 3212 [b].) To succeed in defeating the motion, the opponent must make this "showing by producing evidentiary proof in admissible form” or "demonstrate acceptable excuse” for failure to do so. (Zuckerman v City of New York, 49 NY2d 557, 562 [1980].) "[M]ere conclusions, expressions of hope or unsubstantiated allegations or assertions are insufficient” to carry this burden. (Supra.) The court accordingly holds that defendants’ submissions are insufficient to demonstrate a triable issue of fact on the issue of plaintiffs lack of good faith.
The remaining issue is whether summary judgment should nevertheless be denied or stayed pending discovery. The general rule is that a motion for summary judgment should not be granted prior to completion of discovery where facts necessary to oppose the motion may exist but are within the exclusive knowledge or control of the moving party. (See, e.g., Integrated Logistics Consultants v Fidata Corp., 131 AD2d 338 [1st Dept 1987]; Simpson v Term Indus., 126 AD2d 484 [1st Dept 1987]; Trustco Bank N. Y. v Higgins, 191 AD2d 788 [3d Dept 1993].) However, this rule is not without qualification. It must "appear from affidavits submitted in opposition to the motion that facts essential to justify opposition may exist.” (CPLR 3212 [f].) "A mere chance or hope that something will be uncovered [through discovery] which will add to the case is insufficient.” (Harris v Alcan Aluminum Corp., 91 AD2d 830, 831 [4th Dept 1982], affd for reasons stated below 58 NY2d 1036 [1983].) CPLR 3212 (f) "should not be employed as a means of embarking upon a 'fishing expedition’ (see Auerbach v Bennett, 47 NY2d 619, 636) to explore the 'possibility’ of fashioning a defense against plaintiff.” (Citibank v Furlong, 81 AD2d 803, 804 [1st Dept 1981].) Thus, determination of a motion for summary judgment will not be avoided by a claimed need for discovery, even where the opponent of the motion alleges wrongdoing on the movant’s part, unless the misconduct is identified with specificity and at least some "evidentiary basis” is offered "to suggest” that discovery may lead to relevant evidence. (See, Harris v Alcan Aluminum Corp., supra, at 831; Boston Safe Deposit & Trust Co. v Hoffman, 177 AD2d 368 [1st Dept 1991]; Citibank v Furlong, supra.)
*787 The instant case presents a close question as to whether defendants have submitted sufficient factual support for their request for discovery. Defendants’ papers are not only insufficient, as discussed above, to demonstrate a triable issue of fact as to plaintiffs bad faith but, inexplicably, fail to explain why an affidavit was not submitted by the broker who purportedly made an investigation of the claims on defendants’ behalf and who presumably therefore could have given some competent proof as to the inadequacy of plaintiffs investigation. Yet, the papers do make a showing that plaintiff has not responded in a forthright or informative manner to requests made by defendants for specific information about the settlements. It is undisputed that prior to the commencement of this action, plaintiffs agent responded to an inquiry by defendants about the bases for the settlements with a letter that stated in wholly conclusory fashion: "With the spiraling costs of claims and litigation expenses, cases must be weighed as to the most economical, efficient, and expedient closure. We have reviewed the file(s) in question and found they were handled in accordance with AIAC claims-handling procedures.” While this letter indicated that further information would be provided if necessary, it is also undisputed that no such information was in fact provided, and that this lawsuit followed. Approximately one month after the complaint was served, defendants served a notice to take plaintiffs deposition. The deposition was adjourned (for reasons which do not appear on the record), and plaintiffs motion for summary judgment was made returnable barely two months after the original date for which the deposition had been noticed. Timely service of a discovery request is by itself insufficient to mandate denial of summary judgment, but is a factor which may be taken into account in determining whether discovery should be permitted. (Cf., Simpson v Term Indus., supra, 126 AD2d, at 486; Blue Bird Coach Lines v 107 Delaware Ave., 125 AD2d 971 [4th Dept 1986].)
While mindful that this litigation should not be prolonged based on a mere assertion of wrongdoing on plaintiffs part, this court is disturbed by the fact that defendants’ efforts to obtain meaningful information about the bases for the settlements have been avoided by plaintiff both before and after commencement of the action. Under these circumstances, denial of defendants’ discovery request would effectively immunize plaintiff from any inquiry into its good faith in set *788 tling the claims, and would make the good-faith obligation one in name only.
The court accordingly holds that the motion for summary judgment should be denied, with leave to renew after defendants have had a reasonable opportunity to conduct discovery.

. Feliberty v Damon (72 NY2d 112) is not to the contrary. Feliberty was an action by a doctor against his medical malpractice insurer, alleging the insurer’s settlement in bad faith of an underlying malpractice action. The insurer had settled the malpractice action after verdict but before entry of judgment, in disregard of the doctor’s demand that the insurer take an appeal, and without the doctor’s consent. In dismissing the bad-faith cause of action, the Appellate Division (129 AD2d 207) had held categorically that "a cause of action alleging a breach of the insurer’s duty of good faith will not lie where the insurer, contrary to the wishes of the insured, has settled such claim within the monetary limits of the insured’s policy.” (Supra, at 210.) Although agreeing with the Appellate Division that the bad-faith claim must be dismissed, the Court of Appeals rendered a more qualified decision, holding that "on this record” a bad-faith claim was not "stated,” as it was based wholly on the insurer’s refusal to take an appeal and settlement without the doctor’s consent, as it had a right to do under the policy. In Feliberty, moreover, the interests which the insurer was alleged to have disregarded were not financial interests — the Court having specifically noted that the plaintiff had suffered "no out-of-pocket loss” (at 116) — but rather, the doctor’s concern for his professional reputation. The Court was therefore not called upon to consider the insurer’s duty of good faith in connection with a settlement where a deductible was involved.

. These cases were decided under the sinister motive standard which has since been rejected by Pavia v State Farm Mut. Auto. Ins. Co. (82 NY2d 445). But even under the gross disregard standard, the court’s inquiry into the good faith of the insurer’s assessment of the insured’s potential liability to the claimant should not involve what is in effect a trial on the merits of the underlying claim. A contrary holding would render the bad-faith action substantially more complicated than the underlying litigation, and would render unreasonably perilous an insurer’s reliance on the common insurance policy provision permitting it to "settle”, as opposed to "try”, a claim in discharging its duty to defend under the policy.

. Defendants read the word "only” into the provision, arguing as if the provision states the insurer "will pay only those sums that the insured becomes legally obligated to pay.” The pertinent language of the policy is as follows:
"1. Insuring Agreement.
"a. We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury’ or 'property damage’ to which this insurance applies. No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under supplementary payments — coverages a and b * * * We will have the right and duty to defend any 'suit’ seeking those damages. But:
"(1) The amount we will pay for damages is limited as described in SECTION III — LIMITS OF INSURANCE;
"(2) We may investigate and settle any claim or 'suit’ at our discretion.”

. This argument has met with varying success in courts around the country. (Compare, St. Paul Fire & Mar. Ins. Co. v Edge Mem. Hosp., 584 So 2d 1316 [Ala 1991], with Insurance Co. v Young Painting & Decorating Co., 11 Mich App 304, 161 NW2d 24 [1968] [rejecting argument]; see also, Annotation, 18 ALR5th 474 [cases annotated].)
Although the court is not called upon to address the issue, it is noted that in the instant case, the policy provision committing the insurer to pay "those sums that the insured becomes legally obligated to pay” appears to be a provision for the benefit of the insurer and is in any event expressly made subject to the insurer’s right to settle at its discretion. The provision is followed by the language "But * * * (2) We may investigate and settle any claim or 'suit’ at our discretion.” Moreover, even if the two provisions were inconsistent, general principles of contract interpretation would require the policy to be read, if possible, in such a manner as to reconcile seemingly inconsistent provisions, and as to avoid rendering a provision meaningless. (See, Two Guys from Harrison-N. Y. v S.F.R. Realty Assocs., 63 NY2d 396, 403 [1984].) This court is inclined to the view that a reading of the policy which would preclude the insurer from settling any claim which had not been reduced to judgment would make meaningless the provision permitting the insurer to settle claims within its discretion.