OPINION OF THE COURT
Kaye, J.
 This appeal, in an action by an insured against his insurer, concerns two issues relating to an insurer’s duty to defend litigation brought by a third party against the insured: first, settlement of the litigation by the insurer, and second, responsibility for malpractice of counsel retained for the insured. As to both, we conclude that on this record the complaint against the insurer was correctly dismissed.
On April 26, 1977, plaintiff — Mario Feliberty — a Buffalo physician, for the first time was consulted by Thomas Michaels. Michaels, an ironworker, complained of recurring throat pain and lumps in his neck. Noting that Michaels had been exposed to heavy amounts of dust in his work, plaintiff examined him for about 10 minutes, during which time he observed slight redness of his throat and small lumps in his neck, and then advised Michaels to have his chest X-rayed and return if the condition worsened. Michaels did not again consult plaintiff. On October 12, 1979, plaintiff was served with a summons and complaint alleging that he had commit *115 ted medical malpractice by failing to diagnose at an early, easily treatable stage, what was ultimately discovered to be lymphoma. Plaintiff forwarded the papers to his insurance carrier, defendant Medical Malpractice Insurance Association, which in turn retained a Buffalo law firm to represent him in the malpractice action. The insurer also advised plaintiff that he was free to consult his own attorney, at his expense, to protect his personal interests.
After a medical malpractice panel unanimously concluded that plaintiff had committed malpractice, the case proceeded to trial, resulting in a verdict of $1,239,000. Plaintiff was assessed 60% of the fault, or $743,000 of the damages, a sum within policy limits. Plaintiff demanded of his attorneys and the insurer that they appeal this verdict, but before judgment was entered — and allegedly without plaintiff’s knowledge — the insurer settled the claim for $700,000. Plaintiff then brought this action for legal malpractice against the law firm, contending that the firm’s negligence and the publicity following the verdict had destroyed his practice and ultimately forced him to leave the area. He also sought compensatory and punitive damages from defendant insurer, alleging fraud and breach of contract in connection with the settlement, and liability for the legal malpractice of the attorneys it had retained to defend him.
In particular, in his complaint against the law firm plaintiff charged that his attorneys had not advised him of the meeting of the malpractice panel; had not consulted with him throughout the proceedings; and that they investigated, pleaded and prepared inadequately, failed to make obvious objections, conduct reasonable examination of witnesses, introduce favorable evidence at trial, properly sum up or make written submissions. Plaintiff complained that after trial, counsel had failed to move for a mistrial or reduction of the verdict, omitted to have the settlement sealed, and disregarded his requests to appeal. Plaintiff repeated these same allegations against the insurer, contending that the malpractice of retained counsel constituted a failure on the part of the insurer to provide a proper legal defense. Additionally, he complained that the insurer neither consulted him before settling nor advised him of his rights concerning appeal.
Supreme Court granted the insurer’s motion to dismiss the complaint against it, holding that it had an absolute right to settle under the policy, and that it had no vicarious liability for the alleged negligence of independent counsel retained for *116 its insured.[1] The Appellate Division affirmed, and we granted leave to appeal.
Two contentions lie at the heart of plaintiffs appeal: first, that the insurer breached its contract and was guilty of bad faith when it settled the case without his consent and failed to take an appeal, and second, that the insurer stands liable for the legal malpractice of counsel it retained to represent him. We agree with both Supreme Court and the Appellate Division that neither contention has merit, and therefore conclude that the complaint was properly dismissed.
Both courts correctly dismissed plaintiff’s claims of wrongdoing regarding the settlement. While the settlement was within policy limits and plaintiff therefore technically suffered no out-of-pocket loss, he is understandably concerned about protecting a different interest — his professional reputation. This insurance contract, however, specifies that the "company may make such investigation and such settlement of any claim or suit as it deems expedient.” Unlike bargained-for, and presumably costlier, policy provisions contemplating the insured’s consent to settlement (see, 7C Appleman, Insurance Law and Practice § 4711, at 55 [1988 Supp]), here the parties’ contract unambiguously gave the insurer the unconditioned right to settle any claim or suit without plaintiff’s consent.
Nor, on this record, can plaintiff succeed in his contention that, in settling, the insurer violated any implied obligation or acted in bad faith. An insurer "is obliged in most circumstances to respond accurately to requests from its insured with reference to the progress of any settlement negotiations.” (Knobloch v Royal Globe Ins. Co., 38 NY2d 471, 479.)[2] But plaintiff has alleged no failure to respond accurately to requests regarding settlement offers. His discontent centers instead on the insurer’s settlement without his knowledge or consent, as it had the right to do under the policy, instead of taking an appeal.
Moreover, the obligation articulated in Knobloch rested on the fairness in that case of providing the insureds sufficient *117 information, in response to their direct inquiry regarding settlement offers, so that they could protect themselves against liability that exceeded their coverage. The insureds in Knobloch might have chosen to increase the carrier’s settlement offer with their own funds had they been apprised of the progress of the settlement talks. Instead, the insurer denied them the requested information, the case went to trial, and the verdict greatly exceeded their coverage. Here, by contrast, plaintiff’s request that an appeal be taken did not put the insurer on notice that he wished to be informed of any contemplated settlement so that he could protect against personal exposure,[3] and the settlement the insurer negotiated was well within policy limits. Thus, we agree with Supreme Court and the Appellate Division that, in the present circumstances, no fraud or breach of contract claim was stated against the insurer in connection with its settlement of the medical malpractice action.
Similarly, the complaint fails to state a cause of action against the insurer for the second, independent basis of liability — the alleged malpractice of retained counsel.
When an insured has been sued, the insurer does not satisfy its duty to defend merely by designating independent counsel to defend the litigation (see generally, 7C Appleman, Insurance Law and Practice § 4687). This appeal, however, does not call upon us to set out all the parameters of the insurer’s duty to defend in litigation because it presents a limited issue. Plaintiff does not allege that the insurer designated incompetent or conflicted counsel (see, e.g., Cornwell v Safeco Ins. Co., 42 AD2d 127); and he does not allege that the insurer ignored complaints regarding counsel’s incompetence, or indeed that he expressed any dissatisfaction to the insurer about counsel’s services. His sole contention is that, in its day-to-day conduct of his defense, the law firm performed inadequately, and that, for this malpractice, the insurer stands vicariously liable.
We begin with the basic proposition that liability in negligence is normally premised on a defendant’s own fault, not the wrongdoing of another person. The doctrine of vicarious liability, which imputes liability to a defendant for another *118 person’s fault, rests in part on the theory that — because of an opportunity for control of the wrongdoer, or simply as a matter of public policy loss distribution — certain relationships may give rise to a duty of care, the breach of which can indeed be viewed as the defendant’s own fault (Kavanaugh v Nussbaum, 71 NY2d 535, 546).
It was early postulated that a master had the ability, and the obligation, to control its servant, and would be liable for torts committed by the servant in the course of employment (see generally, Harper and Kime, The Duty to Control the Conduct of Another, 43 Yale LJ 886 [1933-1934]). The common-law distinction between “servants” and “independent contractors,” whose wrongdoing generally gave rise to no liability on the part of those who hired them, is comparatively recent (Prosser and Keeton, Torts §71, at 509 [5th ed]). The reason most commonly advanced for the distinction is that an employer cannot control the manner in which work is performed by an independent contractor as it can the work of a servant; in these circumstances, the contractor itself is properly chargeable with preventing, bearing and distributing the attendant risks. (See, Restatement [Second] of Torts § 409, comment a.) The principle that an employer is not liable for the acts of independent contractors remains the general rule today, albeit with growing public policy exceptions; the Restatement lists approximately 20 exceptions to the rule (see, Restatement, op. cit., §§ 410-429; see also, Comment, Risk Administration in the Marketplace: A Reappraisal of the Independent Contractor Rule, 40 U Chi L Rev 661 [1973]).
Plaintiff does not seriously dispute that the law firm retained by defendant to represent him was an independent contractor; he does not claim that, in the conduct of his defense, the law firm was subject to defendant’s actual direction and control. The question is simply whether the facts of this case fall within one of the recognized exceptions to the general rule that an employer is not liable for the acts of an independent contractor, and if not, whether a new exception should be recognized.
Plaintiff urges that the insurance company’s contractual duty to defend him was a nondelegable duty, thus bringing his claim within an exception to the general rule of nonliability. A nondelegable duty has been described as one that the employer is not free to delegate to a contractor and "requires the person upon whom it is imposed to answer for it that care *119 is exercised by anyone, even though he be an independent contractor, to whom the performance of the duty is entrusted.” (Restatement, op. cit., Introductory Note, at 394.) In large part, whether a duty — or, perhaps more accurately, whether liability — is "nondelegable” turns on policy considerations. A duty is nondelegable when "the responsibility is so important to the community that the employer should not be permitted to transfer it to another.” (Prosser and Keeton, Torts § 71, at 512 [5th ed].)
A nondelegable duty has been found, for example, when the work contracted for was inherently or abnormally dangerous (McDonald v Shell Oil Co., 20 NY2d 160, 165-166); when services, though in reality rendered by an independent contractor, were accepted by a third party after assurance that they were being supplied by its employer (Miles v R & M Appliance Sales, 26 NY2d 451, 454); or when the duty was created by statute (Allen v Cloutier Constr. Corp., 44 NY2d 290, 300). Because the employer knew that the work for which it had contracted posed particular danger to others, or because it knew that another person reasonably looked only to it for the performance of services (contrast, Kavanaugh v Nussbaum, 71 NY2d 535, 547-549, supra), or because of a statutory obligation of care, a duty can fairly be said to run from the employer to those third parties.
We have not previously recognized an insurer’s obligation to defend its insured in the conduct of a litigation as a "nondelegable duty,” and we decline to do so in this case.
In Smoot v State Farm Mut. Auto. Ins. Co. (299 F2d 525)— involving an insurer’s failure to settle within policy limits — a Federal Court of Appeals concluded that an insurer’s duty to defend is subject to vicarious liability, noting that the duty is "an important and frequently distinguishable part of the insurance contract” and that the insurer therefore stands liable for the agents it selects to execute its promises (id., at 530; see also, Continental Ins. Co. v Bayless & Roberts, 608 P2d 281 [Alaska]; Highway Ins. Underwriters v Lufkin-Beaumont Motor Coaches, 215 SW2d 904 [Tex]). The California Court of Appeal, in Merritt v Reserve Ins. Co. (34 Cal App 3d 858, 881-882, 110 Cal Rptr 511, 526-527), reached the contrary conclusion: that the remedy for negligence of trial counsel in the actual conduct of an insured’s defense in a litigation should lie in an action against counsel for malpractice and not a suit against the insurer based solely on vicarious liability. For the *120 following reasons, we conclude that Merritt poses the better rule.
First, the duty to defend an insured is by its very nature delegable, as all the parties must know from the outset, for in New York — as in California — an insurance company is in fact prohibited from the practice of law (Judiciary Law § 495). Accordingly, the insurer necessarily must rely on independent counsel to conduct the litigation. Second, the paramount interest independent counsel represents is that of the insured, not the insurer. The insurer is precluded from interference with counsel’s independent professional judgments in the conduct of the litigation on behalf of its client (Trieber v Hopson, 27 AD2d 151, 153; American Employers Ins. Co. v Globe Aircraft Specialties, 205 Misc 1066, 1075; see also, Code of Professional Responsibility EC 5-17, 5-21, 5-23). Vicarious liability thus produces an untenable situation here: on the one hand an insurer is prohibited from itself conducting the litigation or controlling the decisions of the insured’s lawyer, yet on the other hand it is charged with responsibility for the lawyer’s day-to-day independent professional judgments in the "nuts and bolts” of representing its client. Finally, in determining whether a new exception should be recognized, we note that an insured is not otherwise left without a remedy for a law firm’s claimed incompetence, and a law firm is not insulated from liability for wrongdoing; indeed, in the case before us, plaintiff has sought full recovery for his damages in a legal malpractice claim against the firm.
Thus, given the insurer’s inability to provide or control the legal services in issue, and the existence of a remedy for incompetence against counsel, we conclude that the imposition of vicarious liability in the circumstances is unwarranted.
Accordingly, the order of the Appellate Division should be affirmed, with costs.
Chief Judge Wachtler and Judges Simons, Alexander, Titone and Bellacosa concur; Judge Hancock, Jr., taking no part.
Order affirmed, with costs.

. This appeal concerns only the case against the insurer. The record does not disclose the status of plaintiff’s action against the law firm.

. As the court noted, even the insurer’s refusal to respond to the insureds’ direct inquiry regarding settlement "was relevant on the issue of bad faith, although we would attach little significance to it, standing alone.” (id.)

. Plaintiffs request that an appeal be taken did not even foreclose the possibility that he would have been satisfied by a settlement on more favorable terms than the $1,239,000 verdict. There is no suggestion in the record that plaintiff at the time expressed fear of injury to his reputation and wished to assume personal responsibility for the appeal.