645 A.2d 1358

**Raymond M. BLEDAY, Individually, Raymond M. Bleday, DPM, a Professional Corporation and Central Pennsylvania Podiatry Associates, Appellants,**

**v.**

**OUM GROUP, Pacific Insurance Company, Continental Insurance, Continental Insurance Health Care and Riley & Fleming Adjuster, Ltd., Appellees.**

Superior Court of Pennsylvania.

Argued May 11, 1994.

Filed Aug. 11, 1994.

Frederick B. Gieg, Jr., Altoona, for appellants.

Richard S. Dorfzaun, Pittsburgh, for OUM Group, Pacific Ins. and Continental Ins., appellees.

Timothy R. Smith, Pittsburgh, for Riley & Fleming, appellee.

Before TAMILIA, HUDOCK and HESTER, JJ.

HUDOCK, Judge:

Raymond M. Bleday, DPM, and Central Pennsylvania Podiatry Associates (Appellants) appeal from the order entered by the trial court sustaining the preliminary objections in the nature of a demurrer of OUM Group, Pacific Insurance, Continental Insurance, Continental Insurance Health Care (Insurers) and of Riley & Fleming Adjusters, Ltd. (Adjusters). We affirm.

Appellants secured malpractice insurance through Insurers for the period of February, 1988, through February, 1989. The policy obtained by Appellants contained the following premium:

The company shall have the right and duty to defend any suit against the **insured** seeking damages because of such

injury even if any of the allegations of the suit are groundless, false or fraudulent. The company may make such investigation and settlement of any claim or suit as it deems expedient. (Emphasis in original)

Within the time period covered by said policy, Tracey Worchesky (Worchesky) instituted an action against Appellants. The nature of her claim was that she had to seek corrective surgery from another podiatrist because she never properly recovered from surgery performed by Dr. Bleday on February 2, 1988. Insurers investigated the claim made by Worchesky through Adjusters. On December 7, 1990, over the objection of Appellants, Insurers settled Worchesky's claim for $10,000.[1] Insurers stated that the settlement was a result of a business decision which was made to "avoid the cost of litigation and the uncertainties of a jury trial." Letter to Appellants, 12/7/90, at p. 1.

On or about April 5, 1993, Appellants filed a complaint against Insurers and Adjusters. Count I of the complaint, sounding in breach of contract and negligence, alleges that Insurers breached their duty of good faith to Appellants by settling Worchesky's claim without their consent. In Count II, Appellants aver that Adjusters failed to adjust Worchesky's claim within their best interests. With respect to damages, Appellants assert that they will be subjected to increased insurance premiums, loss of earnings, and harm to reputation since Dr. Bleday's name will be placed on the National Physician Data Bank, a list of doctors who have been involved in malpractice actions.[2] On April 23, 1993, Insurers and Adjusters each filed preliminary objections in the nature of a demurrer. The trial court granted the objections on November 3, 1993. This direct appeal followed.

1. As one of the grounds for objecting to the settlement, Appellants assert that Worchesky, at no time, submitted an expert report to support her claim of injury. The only expert report was secured by Adjusters, and it stated that Dr. Bleday was not negligent.

2. Appellant asserts that he invested $25,000 in the appeal process concerning the placement of his name on the National Physician Data Bank.

On appeal, Appellant first presents a novel issue for our review. We must decide whether an insured has a cause of action against its insurer when, contrary to the demands of the insured, the insurer settles a claim within the insurance policy's limits, and where the policy empowers the insurer to make settlement of any claim as it "deems expedient". Appellants assert that Insurers, despite the policy language "deems expedient", have the duty to act in good faith in the handling of its claims, and that, since Insurers settled the claim made by Worchesky in bad faith, a breach of such good faith duty has occurred, giving rise to a cause of action against Insurers.

Our standard of review is as follows:

On review of an order sustaining preliminary objections in the nature of a demurrer and dismissing a complaint, our review is plenary. We must determine if the trial court correctly determined that, taking as true all properly pleaded material facts and disregarding all pleaded conclusions of law, under no circumstances will the law permit recovery on the complaint.

*Pysh v. Security Pacific Housing Service*, 416 Pa.Super. 64, 69, 610 A.2d 973, 975 (1992), *alloc. den.*, 533 Pa. 625, 620 A.2d 491 (1993) (citations omitted).

 Although there is widespread use of "deems expedient" provisions of the type found in the case herein, there is little or no case law interpreting such phrase in Pennsylvania. After a thorough review of case law from other jurisdictions, we conclude that, although judicial deference must be given to the decision of an insurance company to settle a claim *within* the policy limits, a claim for bad faith may, in limited circumstances, be asserted against the insurance company notwithstanding a "deems expedient" provision. A "deems expedient" provision in an insurance contract cannot be interpreted to convey to an insurance company an absolute right to settle a claim within the policy limits if such settlement was contrary to the intent and expectation of the parties. However, after a thorough review of the complaint filed by Appellants, we find that Appellants did not sufficiently plead a cause of action in

bad faith against Insurers, and, thus, the trial court properly granted Insurers' preliminary objections.

Several jurisdictions hold that a "deems expedient" provision in an insurance contract conveys to an insurer an absolute right to settle the claims of the insured *within* the insurance policy limits. In *Marginian v. Allstate Insurance Company*, 18 Ohio St.3d 345, 481 N.E.2d 600 (1985), the appellee, after his car was involved in two separate accidents, notified his insurer, Allstate Insurance Company, and instructed his insurer not to pay anything on either claim since both accidents were the result of the negligence of the other party. Notwithstanding the appellee's directive, the insurer, relying on the policy's language,[3] settled both claims within the monetary limits of the appellee's policy. The appellee instituted an action against the insurer alleging that the insurance company was liable to him since it failed to act in good faith with respect to the settlement of his claims. On appeal, the Ohio Supreme Court was presented with the novel issue, "whether an insured has a cause of action against its insurer when, contrary to the wishes of the insured, the insurer settles claims lodged against the insured within the monetary limits of the insured's policy, and where the policy empowers the insurer to settle claims as it feels appropriate." *Marginian*, 481 N.E.2d at 601. In reviewing the language of the insurance policy, the Ohio Supreme Court determined that the parties "expressly and unambiguously" contracted for the precise language so used. Thus, the Court, recognizing that it could not judicially enlarge a private contract, held, "that where a contract of insurance provides that the insurer may, as it deems appropriate, settle any claim or action brought against its insured, a cause of action alleging a breach of the insurer's duty of good faith will not lie where the insurer has

3. The insurer issued a policy to the appellee which contained, in pertinent part, the following language

"[Allstate] will defend a person insured if sued as the result of a covered auto accident. This defense will be supplied even if the suit is groundless, false or fraudulent. We will defend that person at our own expense, with counsel of our choice and, may settle any claim or suit if we feel this is appropriate."

*Marginian*, 481 N.E.2d at 602.

settled such claim within the monetary limits of the insured's policy." *Id.* at 603.[4]

Likewise, in *Feliberty v. Damon*, 72 N.Y.2d 112, 531 N.Y.S.2d 778, 527 N.E.2d 261 (1988), a medical malpractice panel found that the appellant committed malpractice and was liable in the amount of $743,000. Before judgment was entered and without his consent, the appellant's insurer settled the claim for $700,000, an amount within the policy limits. The appellant sought compensatory and punitive damages from the insurer, asserting that his reputation was damaged as a result of the settlement. The New York court, in granting the insurer's motion to dismiss the complaint, held that the insurance company had an absolute right to settle under the language of the policy. *Feliberty*, 527 N.E.2d at 262. The language of the policy specified that the "company may make such investigation and such settlement of any claim or suit as it deems expedient." *Id.* In upholding the dismissal of the complaint, and thus finding that the insurance company had an absolute right to settle the claim, the Court of Appeals stressed that, "[u]nlike bargained-for, and presumably costlier, policy provisions contemplating the insured's consent to settlement, here the parties' contract unambiguously gave the insurer the unconditioned right to settle any claim without [the appellant's] consent." *Id.* (citation omitted).

However, our further examination of the decisions of other jurisdictions reveals that a bad faith claim may be exerted against an insurance company despite a "deems expedient" provision. Such a cause of action was permitted in *Mitchum v. Hudgens*, 533 So.2d 194 (Ala.1988). In *Mitchum*, St. Paul Fire and Marine Insurance Company, through its attorney, reached a settlement agreement in a medical malpractice claim against Dr. Mitchum, its insured. Said settlement was within the limits of Mitchum's policy. Mitchum's liability

4. We note that the Ohio Supreme Court was careful to distinguish the facts in *Marginian* from a situation where an insurer *fails* to settle a claim within the insured's policy. In those situations, the Court recognized that a bad faith cause of action against the insurer could be maintained when, as a result of its failure to settle, an insured was exposed to a judgment in excess of its insurance policy. *Id.* at 603.

insurance provided that the insurer had the right "to investigate, negotiate and settle any suit or claim if we think that's appropriate." *Mitchum*, 533 So.2d at 196. Dr. Mitchum instituted this lawsuit alleging that the settlement, which was made without his permission, caused him to lose his liability insurance and, as alleged by Mitchum, caused damage to his professional reputation. Regarding the issue of settlement without the insured's consent, the Supreme Court of Alabama found that, under the language of the policy, the insurer had the exclusive right to make a settlement, within the policy limits, of any claim brought against the insured. *Id.* However, the Court stressed that this right to settlement is not an arbitrary right. "The right given by contract still requires that the insurer make an investigation, consider the desires or instructions of the insured and that the settlement not be made in bad faith." *Id.* at 197 (*quoting* 7C J. Appleman, Insurance Law and Practice, § 4711 (3d ed. 1983)).

In *Shuster v. South Broward Hospital*, 591 So.2d 174 (1992), a case similar to the case herein, the Supreme Court of Florida, recognizing an insurer's discretion to make settlements, has defined limited circumstances wherein a bad faith claim may be established. In *Shuster*, the insured physician instituted a common law bad faith action against his insurer alleging that the insurer acted in bad faith when it settled three claims against the insured without his consent. With respect to damages, the insured alleged that he lost his ability to maintain malpractice insurance, that his reputation was damaged, and that he suffered from mental distress. Like the case herein, the insured's policy contained a "deems expedient" provision.

In interpreting the impact of this phrase, the Court opined:

The language of the provision is clear and the insured was put on notice that the agreement granted the insurer the exclusive authority to control settlement and to be guided by its own self-interest when settling the claim for amounts within the policy limits. The obvious intent behind placing the provision in the agreement was to grant the insurer the authority to decide whether to settle or defend the claim

based on its own self-interest, and this authority includes settling for the nuisance value of the claim. Therefore, we interpret the provision as granting the insurer the discretion to settle cases for amounts within the policy limits, regardless of whether the claim is frivolous or not. The parties have expressly contracted with respect to the subject matter and this Court declines to rewrite the policy when the insurer merely exercises its rights under the agreement.

*Shuster,* 591 So.2d at 176–77 (citations omitted). However, the Court further stressed that every contract that is entered into requires the good faith performance of its provisions, and, thus, the "deems expedient" provision is not absolute. The Court so reasoned given the well-settled law that in construing contracts, the intent and expectation of the parties must be given consideration. *Id.* at 177. With this in mind, the Court, in *dicta,* posited two situations wherein an insurer can act against the intent of the parties, and hence, in bad faith. First, in a situation where there are multiple parties to a lawsuit, a "deems expedient" clause will not protect an insurer who indiscriminately settles with one or more of the parties for the full amount of the policy, and, thus, exposes the insured to an excess judgment from the remaining parties to the law suit. *Id.* Second, despite a "deems expedient" provision, a bad faith action may be maintained against an insurer when the insurer settles a claim without regard to the fact that it may be barring a counterclaim of the insured. "Again, in contrast to the right to settle a claim within the policy limits without considering the impact of higher premiums or damage to the insured's reputation, we do not believe the language of the contract would indicate, nor do we believe it would have been the intent of the parties, that the insured give up his or her right to a counterclaim by entering into the agreement." *Id.*

■ Based on the facts in the case herein, we find that Appellants have not sufficiently pled a cause of action in bad faith. First, there is nothing of record to indicate that Appellants did not freely negotiate the terms of this insurance

contract. In their complaint, Appellants merely allege damages which are speculative. We cannot find, in a situation where the insured freely enters into an insurance contract with "deems expedient" language, that an insurer has settled a claim in bad faith when these types of damages may occur prospectively. We further add that in all malpractice cases, these types of speculative damages are always possible. We believe, as the Supreme Court of Florida did in *Shuster,* that something more is required to maintain a cause of action for bad faith when a claim is settled within the policy limits. However, we leave for another day to define what circumstances constitute bad faith; it is enough to say that they are not present in the instant case.

In their next claim, Appellants allege that Adjusters breached their fiduciary duty to them when they settled the underlying malpractice claim. We do not agree, and thus hold that the trial court properly granted Adjusters' preliminary objections. In order for Appellants to maintain a cause of action against Adjusters, Appellants were required to show that a contractual relationship existed between the parties. In *Hudock v. Donegal Mutual Insurance Company,* 438 Pa. 272, 264 A.2d 668 (1970), our Supreme Court stated that adjusters owe a duty of performance to their principals, the insurance companies, however, this duty does not serve to create a contractual obligation between the adjusters and the insured. An adjuster cannot be liable on a contract in which it never assumed. Thus, in the case herein, we cannot find Adjusters liable to Appellants because Adjusters owed no contractual duty to them. *See also McCormick v. Yorktowne Mutual Insurance Co.,* 15 Pa.D. & C.3d 99 (1980) (since the insured was unable to show a contract with adjusters, no action could be maintained against them by insured for bad faith or fraud).

Order affirmed.