

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-24-1995

# Caplan v Fellheimer

Precedential or Non-Precedential:

Docket 95-1445

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

Recommended Citation

"Caplan v Fellheimer" (1995). *1995 Decisions.* Paper 280.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/280

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


Nos. 95-1445 & 95-1478


MAIA CAPLAN,

Appellant in 95-1445

v.

FELLHEIMER EICHEN BRAVERMAN & KASKEY;
DAVID L. BRAVERMAN

and

MAIA CAPLAN,

v.

FELLHEIMER EICHEN BRAVERMAN & KASKEY;
DAVID L. BRAVERMAN

Vigilant Insurance Company,

Appellant in 95-1478


On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 94-cv-07506)


Argued August 3, 1995

Before: MANSMANN, HUTCHINSON* and ROTH, <u>Circuit Judges</u>

(Opinion Filed October 24, 1995)

1

William H. Ewing, Esq.  (Argued)
Carl Oxholm, III, Esq.
Albert G. Bixler, Esq.
Stephanie A. Philips, Esq.
Connolly, Epstein, Chicco
  Foxman, Engelmyer & Ewing
1515 Market Street
Suite 900
Philadelphia, PA 19102
              Attorneys for Appellant/Appellee Caplan

Carolyn P. Short, Esq.  (Argued)
Kenneth M. Kolaski, Esq.
Reed, Smith, Shaw & McClay
1650 Market Street
2500 One Liberty Place
Philadelphia, PA 19103-7301
              Attorneys for Appellees Fellheimer, Eichen,
              Braverman and Kaskey, P.C. and David L.
              Braverman

Helen M. Braverman, Esq.
Fellheimer, Eichen, Braverman & Kaskey
One Liberty Place
1650 Market Street
21st Floor
Philadelphia, PA 19103-7334
              Attorney for Appellees Fellheimer, Eichen,
              Braverman & Kaskey, P.C Appellees

Thomas A. Riley, Jr., Esq.
Riley, Riper, Hollin & Colagreco
240 Daylesford Plaza
P.O. Box 568
Paoli, PA 19301
              Attorney for Appellee Braverman

Robert B. White, Jr., Esq. (Argued)
Rapp, White, Janssen & German
1800 JFK Boulevard
Suite 500
Philadelphia, PA 19103
              Attorney for Appellant Vigilant Insurance
               Company

OPINION OF THE COURT

3

ROTH, Circuit Judge:

Maia Caplan and Vigilant Insurance Company (Vigilant) have brought this expedited appeal from the District Court's Order of May 25, 1995. The order declared null and void an agreement between Vigilant and Caplan, settling a civil action, entitled Caplan v. Fellheimer Eichen Braverman & Kaskey et al., which Caplan had brought in the Eastern District of Pennsylvania. The May 25 Order also enjoined Caplan from entering into any settlement of the action unless defendants, Fellheimer Eichen Braverman & Kaskey (FEB&K) and David Braverman, were parties to the settlement.

The appellees, FEB&K and Braverman, have moved to dismiss the appeal on the grounds both that the May 25 Order is not an injunction appealable pursuant to 28 U.S.C. § 1292(a)(1) and that the order is interlocutory and does not fall within the "collateral order" exception to the final judgment rule.

Because we find that the May 25 Order is a preliminary injunction, we conclude that we do have appellate jurisdiction of the appeal. We also conclude that Vigilant is a proper party to the appeal. Finally, because we find that the district court erred in its assessment of the factors required to grant injunctive relief, we will reverse the Order of May 25 and remand this action to the district court for further proceedings consistent with this opinion.

## I.   FACTS

In January 1995, Caplan filed a five count amended complaint against FEB&K, the law firm where she had formerly been employed, and against its managing partner Braverman, alleging: (1) violations of Title VII of the 1964 Civil Rights Act, by creating a hostile environment for women at the firm and by sexually harassing Caplan's secretary; (2) negligent infliction of emotional distress; (3) tortious interference with existing and prospective contracts; (4) intentional infliction of emotional distress; and (5) defamation. Defendants tendered the amended complaint to Vigilant, their liability insurance carrier. In February, Vigilant notified the defendants that it would provide a defense for them on all counts of the amended complaint but with a full reservation of rights. Vigilant reserved its rights because it had determined that the first four counts of the amended complaint were not covered under the insurance contract.[1]

Defendants filed counterclaims against Caplan, asserting malicious abuse of process and civil conspiracy to maliciously abuse process. The district court dismissed these

---

[1] Under Pennsylvania law, when an insured tenders multiple claims to an insurer for defense, the insurer is obligated to undertake defense of the entire suit as long as at least one claim is potentially covered by the policy. See, e.g., American Contract Bridge League v. Nationwide Mut. Fire Ins. Co., 752 F.2d 71, 75 (3d Cir. 1985). As to indemnification, however, the insurer is obligated to its insured only for those damages which are actually within the policy coverage. See, e.g., C.J. Heist Caribe Corp. v. American Home Assur. Co., 640 F.2d 479, 483 (3d Cir. 1981).

counterclaims as premature because the underlying action had not been terminated in defendants' favor.

Vigilant's policy with FEB&K allows Vigilant to settle suits without FEB&K's consent.  The relevant provision of the insurance policy reads as follows:

1.  We will defend claims or suits against the insured seeking damages to which this insurance applies.  We may make:

a.  Such investigation of any occurrence, claim or suit, and

b.  Such settlement within the applicable Amount of Insurance available;

as we think appropriate.

Appendix (App.) at 248.

In April 1995, Caplan and the defendants entered into settlement negotiations.  Although the parties came close to an agreement on monetary damages, they could not agree on other issues, including defendants' demand that Caplan issue a public retraction as part of any settlement.  When they could not agree on the wording of the public retraction, negotiations broke down. On May 17, attorneys for both parties informed the district judge that they could not reach a settlement.

At the same time as defendants were negotiating with Caplan, they were also negotiating with Vigilant to take over full defense and liability for the case in return for a payment to them by Vigilant of $190,000, the settlement amount that Caplan and defendants appeared to have agreed upon if Caplan

could be persuaded to issue a retraction. These negotiations also broke down on May 17.

After the breakdown of negotiations, Vigilant's attorney wrote to the district judge on May 17, requesting a settlement conference. All counsel agreed that such a conference would be helpful. At the request of the district judge, the magistrate judge scheduled a conference for May 22. On the morning of the conference, the defendants notified counsel for Caplan that they would not be attending because one of their attorneys was out of the country on vacation. Caplan's counsel telephoned the magistrate judge's chambers to report defendants' absence. Defendants did not notify Vigilant, and counsel for Vigilant appeared at the magistrate judge's chambers to negotiate. In addition, Caplan herself did not receive notice that defendants and their counsel would be absent. She came up from Washington, D.C., for the conference.

Although the conference was rescheduled, the magistrate judge encouraged those present to discuss the possibility of settlement. That same day, Vigilant and Caplan came to an agreement under which Caplan would execute a general release of all claims in favor of defendants in return for Vigilant's payment to Caplan of $200,000. Caplan signed the release and her attorneys executed a stipulation of dismissal with prejudice of the suit. Both the release and the stipulation were to be held by Vigilant pending delivery of the settlement funds.

The following day, May 23, defendants filed an emergency motion with the district court, seeking an order

"temporarily restraining and, after hearing, preliminary [sic] enjoining Plaintiff and her counsel from taking any action whatsoever to consummate the purported 'settlement' arranged by Plaintiff and Defendants' insurance carrier without the knowledge and authorization of Defendants." App. at 128. In support of the motion, defendants asserted that if the injunction were not granted, defendants would "suffer irreparable harm" and that the "harm to Defendants outweighs the harm the injunctive relief sought may cause Plaintiff". The potential harm to defendants, cited by them in their memorandum accompanying the motion, included the loss of the right to vindication at trial and a wrongful and irreparable deprivation of "the agreed to public retraction from Plaintiff". Defendants claimed that their "legitimate interests will be severely prejudiced if the Court does not turn to its inherent equitable powers to grant Defendants' motion in order to prevent this injustice." It is apparent from defendants' memorandum that their prime interest in voiding the settlement between Caplan and Vigilant was to be able to bring an action against Caplan for wrongful use of civil proceedings or for malicious prosecution. Under Pennsylvania's malicious prosecution statute, 42 Pa. Cons. Stat. Ann. § 8351, an essential element of such an action is that the underlying litigation have terminated favorably to the defendant. See Junod v. Bader, 458 A.2d 251 (Pa. Super. 1983) (holding that a compromise is not an outcome sufficiently favorable to a defendant to entitle him subsequently to bring a malicious prosecution action against his accuser).

6

The district court held a hearing on the emergency motion at 4:15 p.m. on May 23. Present at the hearing were the attorneys for Caplan, for Braverman, for FEB&K, and for Vigilant. Defendant Braverman was the only witness. He testified that Caplan's suit had caused him and FEB&K embarrassment and loss of business in the amount of "tens of thousands of dollars a month" and that settlement of the suit without a public retraction from Caplan would prevent defendants from clearing their names.

Although Vigilant was not a party to the proceeding and had not made a motion to intervene, its counsel, Robert B. White, was present and wished to make a statement. Counsel for FEB&K opposed any appearance by Vigilant on the basis that Vigilant had no standing to appear before the court.

The court, however, permitted White to speak. White explained that the policy language gave Vigilant the unqualified right to settle actions in which it provided a defense. He also represented that in return for the agreed settlement payment of $200,000, Vigilant had obtained a general release from Caplan covering all five counts, along with a stipulation of dismissal signed by Caplan's counsel. White stated that the case was over and no injunction was necessary.

In its Order of May 25, the district court granted defendants' motion for injunctive relief. In its Memorandum Opinion, the court recited the four factors a court must consider before granting injunctive relief: 1) reasonable probability of success on the merits, 2) irreparable injury, 3) harm to the other party, and 4) public interest.

In discussing likelihood of success on the merits, the court defined the issue as "whether Defendants can have the litigation settled for them by their insurance carrier." App. at 19. The insurance policy at issue was not before the court but the court assumed for the sake of argument that the settlement clause, as we have quoted it supra, was in the policy. The court concluded that under Pennsylvania law an insurance company would settle a case in bad faith if it settled "without regard to the fact that it may be barring a counterclaim of the insured." App. at 20, quoting Bleday v. OUM Group, 645 A.2d 1358, 1363 (Pa. Super. 1994), allocatur denied 655 A.2d 981 (1955). The court stated that it had to determine "whether Defendants have a reasonable likelihood of showing that their rights will be prejudiced by a settlement and that Vigilant was aware of this when it negotiated a settlement with Plaintiff." App. at 21. Because Vigilant was aware that defendants wanted to sue Caplan for malicious prosecution and because a settlement would bar such an action, the court concluded that defendants had adequately demonstrated a reasonable probability of success on the merits of their assertion that Vigilant had no authority to settle with Caplan on defendants' behalf.

Turning to irreparable injury, the court found that defendants would be damaged if a settlement eliminated their ability to sue Caplan for malicious prosecution. As to harm to the other party, the court determined that Caplan would suffer from the delay in receiving her $200,000 check but this harm was

not greater than defendants' harm in losing their opportunity to clear their names.

Finally, the court found that Caplan and Vigilant went behind defendants' back to work out a settlement and that the public interest was not served "by taking away Defendants' right not to be buried without a fight, either at the settlement table or before a jury of their peers."  The court concluded that the defendants had satisfied the requirements for a preliminary injunction and "[d]ue to this showing, a preliminary injunction shall be entered."

> In the accompanying Order, the court decreed that:
> "the settlement entered into between
> Plaintiff and Defendants' Insurance Carrier
> on May 22, 1995 is hereby declared null and
> void.  It is hereby FURTHER ORDERED that
> Plaintiff is enjoined from entering into any
> settlement of this action unless Defendants
> are a party to such settlement."

Caplan and Vigilant both appealed this order.

The district court had jurisdiction of this case under 28 U.S.C. §§ 1331, 1343, and 1367.  Our jurisdiction to hear this appeal will be the first issue discussed.

## II. DISCUSSION

### A.

Defendants-appellees, FEB&K and Braverman, contend first that the May 25 Order of the district court is not an appealable order, either as an injunction or under the collateral order exception to the final judgment requirement.  See Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541 (1949).  Because we

find that the order is appealable as an injunction under 28 U.S.C. § 1292(a)(1),[2] we will not go on to consider either the collateral order exception or appellants' alternative petition for a writ of mandamus.

Our review of our jurisdiction to hear this appeal is plenary. Anthuis v. Colt Indus. Operating Corp., 971 F.2d 999, 1002 (3d Cir. 1992).

Despite the language of their emergency motion and of their argument before the district court and despite the wording of the May 25 Order, defendants contend that the order is not an injunction nor is it the type of injunctive order which is appealable under § 1292(a)(1). They assert instead that "this action by the Court was an exercise of its inherent and Rule 16 supervisory powers to manage its docket and not an injunction." This supervisory power, they contend, is the power of the court to enforce or to undo a purported settlement. The case cited by defendants to support this proposition is Fox v. Consolidated Rail Corp., 739 F.2d 929 (3d Cir. 1984), cert. denied 469 U.S. 1190 (1985), in which we affirmed the district court's refusal to reopen Federal Employers' Liability Act (FELA) cases which had been brought and then settled in the Pennsylvania state courts.

---

[2]Section 1292(a)(1) provides in pertinent part:

> (a) [T]he courts of appeals shall have jurisdiction of appeals from:
> (1) Interlocutory orders of the district courts of the United States . . . granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions . . ..

In Fox, we agreed with the district court that settlement agreements should be enforced in the same court in which the original litigation had taken place.  Id. at 932-33.

In support of their position that the May 25 Order was not an injunction, defendants also cite the case of Saber v. FinanceAmerica Credit Corp., 843 F.2d 697 (3d Cir. 1988) in which the district court had granted plaintiffs' motion to enforce a settlement agreement against defendants.  We dismissed the appeal, holding that an order to pay money under the settlement, a legal remedy, was "not transformed into an injunctive remedy merely by a district court's imposition of a time limit on the defendants' obligation to pay."  Id. at 702-03.[3]

In their efforts to demonstrate that the May 25 Order is not an injunction, defendants have also distinguished appealable injunctions from injunctions which were incidental to a pending action and which were unrelated to the substantive issues of the case.  See Hershey Foods Corp. v. Hershey Creamery Co., 945 F.2d 1272, 1279 (3d Cir. 1991) (holding that orders that focus on procedural issues and do not grant or deny part of the substantive relief sought by claimant are not immediately appealable under § 1292(a)(1)).

Caplan and Vigilant, on the other hand, support their position that the May 25 Order is an appealable injunction by citing the case of Cohen v. Trustees of the Univ of Medicine &

---

[3]We did note in Saber that we were leaving undecided the question whether an order to pay money, enforceable by a contempt citation, was an injunction.  Id. at 703.

Dentistry of N.J., 867 F.2d 1455, 1464 (3d Cir. 1989) in which we held that an order by the district court, directing reinstatement of a medical school professor, was appealable because it granted part of the ultimate relief sought by the claimant.

> We noted:
> For purposes of 28 U.S.C. § 1292(a)(1), injunctions may be affirmatively defined as follows:
>
> > Orders that are directed to a party, enforceable by contempt, and designed to accord or protect "some or all of the substantive relief sought by a complaint" in more than a [temporary] fashion.

Id. at 1465 n.9 (brackets in original) (quoting Charles A. et al., Federal Practice and Procedure, § 3922, at 29 (1977)). We distinguished non-appealable injunctive orders as having in common the characteristic that "while significant, [they do] not either grant or deny the ultimate relief sought by the claimant." 867 F.2d at 1464.

Reviewing the relevant case law, in light of the facts of the present case, we conclude that the May 25 Order is an appealable order because it does qualify as an injunction under 28 U.S.C. § 1292(a)(1). The order does not deal with pre-trial procedural issues. See Hershey Foods, 945 F.2d at 1279. It does not order the legal remedy of specific performance of the payment of a sum of money. See Saber, 845 F.2d at 702-03.

The May 25 Order does attempt to undo a settlement. Even so, Fox, the case cited by appellees to support their position that approval of settlement orders is part of a district

court's supervisory powers, supports only a narrower proposition: that a federal court should not try to reopen a settlement arrived at in a case which was litigated and settled in state court. Fox does not stand for the proposition that federal court judges may interject themselves into any particular case before them to pass on the propriety of the settlement in that case.

Our federal courts have neither the authority nor the resources to review and approve the settlement of every case brought in the federal court system. There are only certain designated types of suits, for instance consent decrees, class actions, shareholder derivative suits, and compromises of bankruptcy claims where settlement of the suit requires court approval. Cf. United States v. City of Miami, 614 F.2d 1322 (5th Cir. 1980), reh'g granted 625 F.2d 1310, aff'd in part, vacated in part, 664 F.2d 435 (5th Cir. 1981) (en banc):

> In what can be termed "ordinary litigation," that is, lawsuits brought by one private party against another private party that will not affect the rights of any other persons, settlement of the dispute is solely in the hands of the parties. If the parties can agree to terms, they are free to settle the litigation at any time, and the court need not and should not get involved.
>
> * * *
>
> Moreover, procedurally it would seem to be impossible for the judge to become involved in overseeing a settlement, because the parties are free at any time to agree to a resolution of the dispute by private contractual agreement, and to dismiss the lawsuit by stipulation. In this situation, then, the trial court plays no role in overseeing or approving any settlement proposals.

614 F.2d at 1330. See also Gardiner v. A.H. Robins Co., 747 F.2d 1180, 1189 (8th Cir. 1984) ("[in] lawsuits between private parties, courts recognize that settlement of the dispute is solely in the hands of the parties.").

Defendants argue in opposition to this result that they did not consent to this settlement of the lawsuit because it is contrary to their interests. It was only when Caplan and Vigilant started negotiating "behind defendants' backs" that a settlement was reached. They contend that that settlement should not be effective since they were not a party to it. What defendants overlook, however, is that in their contract with Vigilant for insurance coverage, they have authorized Vigilant to act as their agent to settle claims or suits as Vigilant thinks "appropriate." Vigilant is not required by the policy to obtain the defendants' approval of any settlement.[4]

From our examination of facts of the present case, we conclude that the May 25 Order is an appealable injunction because it did deny the substantive relief sought by Maia Caplan. See Cohen, 867 F.2d at 1464. Caplan's suit included a claim for damages. She reached an advantageous settlement of that claim with defendants' insurance company, which was acting in its

---

[4]There are insurance policies which require the insured's consent to settlement. Cf. Brion v. Vigilant Ins. co., 651 S.W.2d 183, 184 (Mo. App. 1983) (holding that provision of insurance contract requiring insured's consent prior to settlement is essentially a "pride" provision which gives insured control over litigation affecting his reputation). Had defendants elected to negotiate for a policy under which they had the right to approve settlement of litigation for which the insurer provided the defense, their position here would be justified. Defendants, however, did not choose to purchase such a policy.

14

capacity as the agent defendants had authorized to settle claims for them. Under the terms of the settlement, Caplan was to receive a payment of $200,000 in return for releasing all her claims against defendants. By her agreement to the settlement, Caplan expressed her satisfaction with the relief she had obtained from the entire litigation. The May 25 Order voided the settlement and denied Caplan the realization of that relief.

In addition, the May 25 Order would appear to be enforceable by contempt. It does not say so in so many words but it implies as much in its commanding tone: "Plaintiff is enjoined from entering into any settlement of this action unless Defendants are a party to such settlement." Caplan would defy such an order at her peril.

**B.**

Having determined that the May 25 Order is an appealable injunction under § 1292(a)(1), we turn to defendants' next argument -- that Vigilant does not have standing to appeal that order because it was not a party of record before the district court. Generally, it is true that those who were not parties before the district court may not appeal an order of the district court. We have, however, recognized that a non-party may bring an appeal in a situation where three conditions are met: 1) the equities favor the appeal; 2) the non-party has participated in some way in the proceedings before the district court; and 3) the non-party has a stake in the outcome of the district court proceedings, which is discernable from the record. Binker v. Pennsylvania, 977 F.2d 738, 745 (3d Cir. 1992) (citing

EEOC v. Pan American World Airways, Inc., 897 F.2d 1499 (9th Cir. 1990), cert. denied, 498 U.S. 815 (1990)).

Defendants assert that Vigilant does not qualify under the Binker test because it had a chance to intervene in the district court but chose not to do so, because its interests are adequately represented by Caplan, because it can still negotiate a settlement with Caplan as long as the defendants are also present, and because it can still negotiate a policy release with the defendants.

The defendants do acknowledge that Vigilant did participate in the hearing on defendants' emergency motion, over their objections, and that Vigilant has a stake in the appeal "because without a settlement it must continue to fulfill its duty to defend." Appellees' Brief at 33 n.8. With these concessions, the only Binker factor left for us to determine is whether the equities favor permitting Vigilant to join in this appeal. We conclude that Vigilant's interest, both specifically in this case and generally in upholding its contractual terms with its policy holders, is adequate to satisfy the Binker factors. The fact that Vigilant may still negotiate a settlement which meets with defendants' approval should not preclude it from asserting its interest in completing the settlement with Caplan which it negotiated, pursuant to its contractual agreement with defendants. Any other result would require Vigilant to expend further defense costs in a suit which it had terminated in a manner expressly permitted by the terms of the policy.

16

Our evaluation of the equitiesnding of bad faith in settlement has been made against an insurer. Sh and that this misconduct on Vigilant's part should trump the provisions of the insurance contract. Defendants are correct in their contentions that they cannot pursue an action for malicious prosecution against Caplan unless Caplan's suit against them is terminated favorably to them and that under Pennsylvania law a settlement is not considered to be a favorable termination. See, e.g., Junod v. Bader, 458 A.2d 251 (Pa. Super. 1983). However, the language in FEB&K's policy with Vigilant expressly authorizes Vigilant to settle suits as Vigilant deems appropriate. This grant of discretion to Vigilant permits it, in its evaluation of a settlement, to consider factors such as the likelihood of defendants being found liable, the cost to Vigilant of defense of the suit, the impression which various parties and witnesses may make at the trial, the strength of the evidence, and the nuisance value of the claim. Cf. Shuster v. South Broward Hosp. Dist. Physicians' Professional Liab. Ins. Trust, 591 So. 2d 174 (Fla. 1992) (interpreting "deems expedient" provision to grant insurer exclusive authority to control settlement, guided by its own self-interest, including settlement for nuisance value of the claim).[5] This type of provision also permits the insurer to settle a suit that presents no valid claim against the defendants. See, e.g., Marginian v. Allstate Ins. Co., 481

---

[5]A policy provision that the insurer may settle a suit it "deems expedient" is similar to the "settle when appropriate" provision found here.

N.E.2d 600, 602 (Ohio 1985) (interpreting "deems appropriate" provision to give insurer right to settle on behalf of insured even if claims are fraudulent or groundless). In view then of the construction which has been given to this type of policy language, we cannot see that Vigilant acted in bad faith in arriving at a settlement with Caplan without first obtaining defendants' approval of the terms of settlement.

Moreover, the claim by defendants of bad faith on Vigilant's part is not directed to that category of actions by an insurer where the courts most often have found bad faith by an insurer in settlement. It is primarily in cases of an insurer's failure or refusal to settle within policy limits that a finding of bad faith in settlement has been made against an insurer. See, e.g., Gedeon v. State Farm Mut. Auto. Ins. Co., 188 A.2d at 322 (holding that insurer assumes a duty to act in good faith and is derelict where it unreasonably refuses an offer of settlement); Marginian, 481 N.E.2d at 603 (finding that a common thread running through most bad faith settlement claims is that insurer failed to settle within policy limits); 7C John Alan Appleman, Insurance Law & Practice (Walter F. Berdal ed., 1979) §§ 4711, 4712.

Cases are much rarer in which an insured claims bad faith because the insurer has settled within the policy limits. See Jon Epstein, Annotation, Liability of Insurer to Insured for Settling Third-Party Claim Within Policy Limits Resulting in Detriment to Insured, 18 ALR5th 474 (1994). It is that type of claim, arising from a settlement within policy limits, which is

defendants' basis for arguing that the settlement here should be voided because Vigilant's bad faith will prevent defendants from recovering from Caplan for their alleged loss of business and harm to their reputations. Defendants' position is based on Bleday, 645 A.2d 1358. In Bleday, however, the Pennsylvania Superior Court held that the insured's complaints of increased insurance premiums, loss of business, and harm to reputation would not support a cause of action under Pennsylvania law against an insurer for bad faith in settling a suit within policy limits:

> We cannot find, in a situation where the insured freely enters into an insurance contract with "deems expedient" language, that an insurer has settled a claim in bad faith when these types of damages may occur prospectively.

Id. at 1363. Bleday does not then support defendants' position that Vigilant's actions in settling with Caplan amount to bad faith by Vigilant toward defendants.

Vigilant argues that it should not be required to seek the consent of the insured to settle in the absence of a provision in the policy that such consent was required. Vigilant's position in making this contention is supported by Pennsylvania law. Indeed, Vigilant might be exposed to a finding of unfair or deceptive acts or practices in the business of insurance under Pennsylvania's Unfair Insurance Practices Act (UIPA), 40 P.S. §§ 1171.1 et seq., if it made a practice of:

> (xv) Refusing payment of a claim solely on the basis of an insured's request to do so unless:

(a) The insured claims sovereign, eleemosynary, diplomatic, military service, or other immunity from suit or liability with respect to such claim;

(b) <u>The insured is granted the right under the policy of insurance to consent to settlement of claims;</u> or

(c) the refusal of payment is based upon the insurer's independent evaluation of the insured's liability based upon all available information.

40 P.S. § 1171.55(a)(xv)(a)-(c) (emphasis added).

Section 1171.5(a)(xv)(b) of the UIPA demonstrates that the Pennsylvania legislature recognizes the significance of an insured's consent to settle provision in an insurance policy. Such a consent-to-settle provision protects the professional, such as a doctor or a lawyer, who is concerned about his or her reputation. <u>See</u>, <u>e.g.</u>, <u>Feliberty v. Damon</u>, 527 N.E.2d 261, 262 (N.Y. 1988); <u>Brion v. Vigilant Ins. Co.</u>, 651 S.W.2d 183, 184 (Mo. App. 1983). An insured's subjective opposition to settlement for reasons such as reputation may impede an insurer from settling with a third party. The Pennsylvania legislature has, however, established the policy that, unless the insurance contract so provides, insurers may not delay settling with third parties on the ground that the insured objects to settlement. If Vigilant is prevented from settling the present case, it may find itself unable to settle other cases involving Pennsylvania insureds who are unwilling to consent. Such a practice by Vigilant would violate the UIPA.

We find, therefore, that the equities favor permitting Vigilant to appeal an injunction that would void this settlement.

20

Vigilant has a strong interest in upholding the provisions of its insurance policy. Moreover, under Bleday, the damages defendants are claiming, as a result of bad faith in settlement, are not recognized under Pennsylvania law as supporting a claim of bad faith by the insured against the insurer. In addition, under the UIPA, Vigilant could be found to be engaging in unfair insurance practices if it made a practice of refusing to settle claims under a "settle when appropriate" policy simply because the insured opposed settlement.

The district court came to a different conclusion, citing Bleday, 645 A.2d 1358, for the proposition that "settle when appropriate" language in an insurance policy does not give an insurer the power to settle a case when that settlement is in bad faith and is contrary to the intent and expectation of the parties. Defendants also rely on Bleday to support their position that an insurance company cannot settle a suit over the objection of the insured if that action would have the effect of extinguishing a claim of the insured.

The district court's and the defendants' reliance on those aspects of Bleday is, however, unpersuasive. In Bleday the Pennsylvania Superior Court was considering the insurer's authority to settle a suit when such a settlement would extinguish an existing counterclaim in that same suit.[6] The

[6]This concept, that settlement and consequent dismissal of an action should not result in the dismissal of an existing counterclaim, is also recognized in the Federal Rules of Civil Procedure. Dismissal of an action in which a counterclaim has been filed is barred under Rule 41(a)(2) when the defendant objects "[i]f a counterclaim has been pleaded by a defendant

21

counterclaim which defendants had filed in the present suit had, however, already been dismissed by the district court as premature. Vigilant's settlement with Caplan has no effect on that no-longer-existent counterclaim. The fact that the settlement may have an effect on a future action which defendants would like to bring against Caplan is an entirely different issue from the one discussed in Bleday.

Finally, although Caplan may, as defendants claim, have a common interest with Vigilant in enforcing the settlement she negotiated, Vigilant's interest is broader than Caplan's because of the effect the May 25 Order may have on Vigilant's policies with other insureds.

We conclude, therefore, that the equities support permitting Vigilant to participate in this appeal.[7]

## C.

Having determined that the May 25 Order is appealable and that Vigilant is a proper party to the appeal, we next turn to the question of whether the district court properly issued the preliminary injunction. We conclude that the district court erred in granting the injunction because the court misinterpreted the clear language of the insurance policy and because it

---

prior to the service upon the defendant of the plaintiff's motion to dismiss . . . unless the counterclaim can remain pending for independent adjudication by the court."

[7]Because we have determined that Vigilant may join in this appeal, we will not go on to analyze appellants' claim that Vigilant was a necessary party to the district court proceedings pursuant to Fed. R. Civ. P. 19.

incorrectly analyzed the factors of irreparable injury and of likelihood of success on the merits.

We review the district court's granting of the injunction to determine whether the court abused its discretion, committed an obvious error in applying the law, or made a serious mistake in considering the proof. In re Assets of Myles Martin, 1 F.3d 1351, 1357 (3d Cir. 1993).

The first factor we will review is irreparable injury. The consideration of the factor of irreparable injury is relevant to the granting of a preliminary injunction because the purpose of such an injunction is to protect the moving party from irreparable injury until the court can render a meaningful decision on the merits. See 11A Charles A. Wright et al., Federal Practice & Procedure 2D § 2947 (1995).

> In order to demonstrate irreparable harm the [moving party] must demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial. The preliminary injunction must be the only way of protecting the [moving party] from harm.

Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 801 (3d Cir. 1989).

The district court defined the irreparable harm to defendants here as the damage to their ability to seek legal redress against Caplan in a malicious prosecution action. App. at 23. The outcome of the present action will of course determine defendants' ability to sue Caplan because they cannot do so unless this action terminates favorably to them. The termination which defendants fear is a settlement like the one

negotiated by Caplan and Vigilant.  But defendants contracted with Vigilant to authorize Vigilant to settle this litigation. Because defendants have acted to permit the outcome which they find unacceptable, we must conclude that such an outcome is not an irreparable injury.  If the harm complained of is self-inflicted, it does not qualify as irreparable.  See 11A Charles A. Wright, Federal Practice & Procedure § 2948.1 pp. 152-53 (1995).

We conclude, therefore, that the harm of which defendants complain is not irreparable.  Moreover, with this finding, the balancing of harms shifts to weigh in favor of Maia Caplan.  If the present settlement is voided and defendants required to agree to any future settlement, Caplan at the least faces a delay in receiving the negotiated settlement amount.  In addition she may be forced to undergo further stress and harassment by having to continue in this litigation which she had settled favorably to her interests.

We next consider the factor of likelihood of success on the merits.  The district court defined likelihood of success as being "not the merits of the litigation between Plaintiff and Defendants, but the question whether Defendants can have the litigation settled for them by their insurance carrier."  App. at 19.  The district court concluded that "Defendants have a reasonable probability of success on the merits of their assertion that Vigilant has no authority to make this settlement with Plaintiff on Defendants' behalf."  App. at 22.

24

The language of the policy, however, clearly provides for Vigilant to settle suits in which it is defending claims. Vigilant is required under Pennsylvania law to defend all claims in a suit if at least one claim is covered by the policy. See American Contract Bridge League, 752 F.2d at 75. Because the policy language permits Vigilant to settle a suit it is defending, it may do so whether or not all claims in the suit are covered by the policy. There is no provision which limits settlement of suits to those in which only covered claims are being defended by the insurer. It is not unusual for an insurance company to make a reservation of rights in defending a suit, as to certain of the claims made in the complaint or as to coverage periods or as to certain named defendants or as to the whole claim because of untimely notification by the insured. Under the policy language, the sole determination required of Vigilant in settling a suit is that it thinks the settlement is appropriate.

As we have discussed in Part II. B above, this settlement provision should be enforced as expressed in the policy. If for reasons of professional reputation an insured wishes to control the settlement of cases, policies are available which provide that protection. FEB&K did not, however, purchase this type of coverage. It is not appropriate for us to amend the policy here in order to give FEB&K a type of coverage for which it didn't contract. Cf. Brokers Title Co. v. St. Paul Fire & Marine Ins. Co., 610 F.2d 1174, 1181 (3d Cir. 1979) ("it is not the function of the court to redraft a contract to be more

25

favorable to a given party than the agreement he chose to enter.").

Because we conclude that the policy should be enforced as written, we consequently conclude that the defendants did not have a likelihood of prevailing in their claim that Vigilant had no authority to make the settlement with Caplan on defendants' behalf. Defendants cannot succeed in their efforts to void a settlement which we have determined was appropriately arrived at and which will terminate this case. For this reason, we find that the district court erred in its analysis of likelihood of success on the merits.

## III. CONCLUSION

Because we find that the district court improperly determined both that defendants would suffer irreparable harm if the settlement of the case was permitted to remain in effect and that defendants were likely to succeed in their assertion that Vigilant was not authorized to settle with Maia Caplan on behalf of defendants, we conclude that the court erred in granting the relief which it did in its May 25 Order. We will reverse the Order of May 25, voiding the settlement and enjoining Caplan from entering into any settlement unless defendants were a party to that settlement. We will remand the case to the district court with directions to dismiss it with prejudice when the stipulation of dismissal, signed by Caplan's counsel, has been filed with the court.

26